### WILLIAM H. DE WARREN v. THE STATE.

Articles 437 and 437*a* provide, that when the witness resides out of the county in which the prosecution is pending, the defendant shall be entitled, on application under oath, stating certain facts, to an attachment; and that the issuance of, or an application for, a subpœna shall not be considered due diligence, in cases where the law authorizes the issuance of an attachment. (Paschal's Dig., Art. 2908, 2909.)

Where such facts are stated as show that, owing to the great distance, no use of diligence could have secured the attendance of the witness, it dispenses with the necessity of an attachment.

Where the accused applied for a continuance, and swore to the material facts which the witnesses would state, upon which the district attorney admitted that the witnesses would swear to the facts as stated, but refused to admit that such facts were true, reserving to himself the privilege to disprove the statement, or to discredit the witnesses, it was error to force the accused into trial.

The third division of Art. 518 of the Code of Criminal Procedure declares that it shall be sufficient, upon the first application for continuance, to state the facts which are expected to be proved by the witnesses, and it must appear to the court that they are material. But there is no provision that the district attorney may admit that the witnesses would so swear, unless he also admit that the facts are true. (Paschal's Dig., Art. 2987, Note 736.)

The accused has the constitutional right to have the witness present. (Paschal's Dig., p. 48, § 8.)

The rule as to the confessions of the accused is governed by Art. 662 of the
Code of Criminal Procedure. (Paschal's Dig., Art. 3127, Note 761.)

Where the accused stated in his application for continuance that his witnesses
would swear that he bought the horse which he was accused of stealing, his
statement of thus having the horse might be used as a confession against
him, if it be proved that he did not purchase the horse as stated.

APPEAL from Colorado. The case was tried before Hon.
BENJAMIN SHROPSHIRE, one of the district judges.

This case was appealed to the Galveston session, but de-
cided at Tyler, and certified back to Galveston, and hence
it is reported in this volume.

De Warren was indicted the 8th March, 1867, for lar-
ceny of a stallion, tried and convicted on the 11th of the
same month; his punishment was assessed by the jury at
twelve years in the penitentiary. When the cause was
called for trial he applied for a continuance, upon the
ground of the absence of material witnesses. The court
held, that the application was good, and granted the con-
tinuance.

The State, in order to avoid the continuance, offered to
admit that if the witnesses named in the affidavits were
present they would swear to the facts set up therein: De
Warren insisting that before he should be forced into trial
the State must admit that the facts stated in his said affi-
davit were true. The court compelled him to go to trial
upon the qualified admission of the State. This ruling is
assigned for error, and is the main question in the cause.

*Barnard & Putney, John T. Harcourt, and Robert L.
Foard* for appellant.—The point at issue was incidentally
before the Supreme Court of Texas in the case of Hyde v.
The State, 16 Tex., 453, and WHEELER, J., gave it as his
opinion, that the State could not force a defendant into
trial upon such a qualified admission. He cited The People
v. Vermilyea, 7 Cow., 369, and 1 Meigs, 95, which author-
ities are decisive of the question, and SAVAGE, C. J., in

the case from 7 Cow., cites the case of Brill v. Lord, 14 Johns., 341, to show what admissions should be made.

In the case of 7 Cow., the defendants desired to continue the cause on account of the absence of one General Swift, and SAVAGE, C. J., remarks as follows: "Admitting that the defendants were entitled to the testimony of the witness, then the only question is, had they the benefit of his testimony? In my judgment, most clearly they had not. When testimony was given showing, *prima facie*, that the witness could not swear, as it was admitted he would, without being guilty of a contradiction, could the jury shut their eyes to the fact, which was staring them in the face, that General Swift had not sworn anything about it?"

And WOODWARD, J., says: "We have nothing to do with the merits, but only with the question whether the legal course of practice has been pursued to reach those merits. The defendants are, in common with every other citizen, entitled to a trial according to the law of the land; and, if the rules of that law have been mistaken, I hold it my duty to give them a new trial."

As to the continuance of cases, we hold, that the general rule is the same in civil and criminal causes, (Hyde v. The State, 16 Tex., 453; Rex v. De On, 3 Burr, 1513; 1 Bl., 510,) though the application in criminal causes is looked into with more strictness. If the statute has been complied with, the court can exercise no discretionary power. The continuance must be granted. (Hipp v. Bissell 3 Tex., 18; Prewitt v. Everett, 10 Tex., 283.) The court, it is true, can look to the pleadings to see if there is a "defense" which would support the evidence sought. (Fowler v. Buckner, 23 Tex., 85.)

In the case of Hyde v. The State, 16 Tex., 454, it is held, that counter affidavits will be received to destroy the common affidavit, and the court says, that "in criminal cases we look to the common law for the rule of practice, in the absence of statutes. At the date of the decision of

this cause, the Penal Code and the Code of Criminal Procedure had not been adopted by the State of Texas, and the court naturally looked to the common law for guidance in matters of criminal practice. But we have now a complete code of penal laws, and a complete code of criminal procedure or practice. If we wish to know whether an offense has been committed against the State, we turn to the Penal Code; if we wish to know how we are to proceed to punish that offense, we look to the Code of Criminal Procedure. The latter code lays down the affidavit a defendant shall make to continue his case; if he complies fully with the requirement, the court must grant him a continuance: he has no discretion. It matters not whether the court has suspicions of the verity of the affidavit or the fairness of its object; the Code provides for no such case. It neither authorizes the receipt of counter affidavits nor of any other testimony to defeat the application. The dry question is this, does the affidavit comply with the statute?"

In the case of People v. Vermilyea, (7 Cow.,) SUTHERLAND, J., quoted by WHEELER, J., in Hyde v. The State, says: "In the cases where the common affidavit applies the court has no discretion; but where there has been laches, or there is reason to suspect the object is delay, the judge at the circuit court may then take into consideration all the circumstances, and grant or delay the application at his pleasure." He then goes on to give a history of that case, to show facts and circumstances which justified the lower court in overruling the application for continuance: "Such as the neglect of the defendants to apply for a commission to take the testimony of the absent witness, Swift, at the May term; that the cause had been twice tried, and the materiality of the testimony of the witness was well known. He was a foreign witness, and beyond the process of the court. The nature of the case was entitled to consideration. It was apparent that General Swift could know nothing which

might not be reached through the other witnesses. The facts had been gone over in other trials. The transactions were of a public character, or at least of a nature more likely to be known than acts which usually pass under a single eye. It is easy to see how the subscribing witness to a deed may be essential; so of any single ground of defense, or any important or decisive fact—an *alibi*, for instance." Yet in this very case, with all these suspicious circumstances attending it, and the court below refusing the application for continuance, the majority of the court held, that the lower court erred in forcing the defendant into trial under the qualified admission of the State that the witness, Swift, would swear to the facts stated in the affidavit if present. This witness, too, had been tried on the very same indictment and acquitted.

In the case 7 Cow., SAVAGE, C. J., cited Ogden v. Payne, 8 East., 31 to 37; The Bank of Utica v. Hilliard, 5 Cow., 15; Hooks v. Rogers, 6 Cow., 557, as cases wherein the court reversed the decisions of the lower court, refusing continuances. In the case 5 Cow., 15, the judge refused to put off the case on the common affidavit, unless the defendant would specify in his affidavit what he expected to prove by his absent witness, who was the attorney of plaintiff; which being declared by the defendant, the court ruled him to trial. The Supreme Court reversed the decision below, stating that the practice requiring a specification of the testimony did not apply unless circumstances of suspicion are made to appear.

We deny the proposition, that the district judge, if he erred in forcing the prisoner into trial, on the qualified admission of the State, can, after hearing the evidence, justify his ruling on the motion for a new trial by the facts brought out on the trial, and conclude that from these facts the affidavit in the first instance was false, and that he should have overruled it, and therefore his erroneous ruling, forcing the defendant into trial on the qualified

admission of the State, had done the prisoner no harm. We conceive that the rulings of the court are either right or wrong at the time they are made, and depend on the facts and circumstances of the case existing at the very time of the ruling, and that we have the right to confine the question to the time of said rulings, and to the facts then existing. Because the judge may be of the opinion that the defendant in an *ex parte* trial is guilty, it will not protect him in those erroneous rulings which brought about the very facts which tend to create that opinion.

The question, as we conceive, before the Supreme Court, is not whether the prisoner is guilty or innocent, but whether he has been fairly and legally convicted according to the forms and rules of the law. He may have stolen all the horses in Texas, and yet he has not been convicted under the law of the larceny of this particular horse.

*Wm. M. Walton, Attorney General,* for the State.—The question in the case turns upon matter of practice in the trial of criminal cases.

The bill of exceptions presents three leading questions to the mind of the court, viz:

I. Was the application for continuance sufficient in law?

II. If yea, then was there error in the ruling of the court requiring appellant to go to trial on the admission of the district attorney, "that if the witnesses named in the application for continuance were present, they would swear to the facts stated in said application?"

III. If there was error in this ruling, can the direct proof of guilt on the defendant authorize and justify the court in refusing a new trial, notwithstanding such error?

I. Was the application sufficient in law to secure the continuance applied for by the defendant?

The application is a literal compliance with the law, save as to the second subdivision on the part touching the

diligence used to procure the testimony. (See the statute governing continuance, Paschal's Dig., Art. 2987.)

But, in discussing this point, it is best perhaps to start with the proposition, that, if the affidavit were in fact insufficient in law, this court is not precluded from so declaring it, because the court below at first held it sufficient, and only overruled it when the district attorney proposed to make admissions, &c. Evidently the court overruled the application because of the proposed admission by the district attorney. If it can be shown that the ruling was right, so it will be held to be by this court, although different reasons may have to be assigned by this court for sustaining such ruling to those given by the court below. The proposition is clear. The right ruling will be sustained here, although the court below may have given a wrong reason for making it.

It is stated in the bill of exceptions that the court below held the application for continuance sufficient.

Was the application sufficient? Without a doubt it was not. (Paschal's Dig., Art. 2987.)

It is fatally defective in that part which seeks to relate the diligence used by the applicant to secure the presence of the witnesses whose testimony be deemed material.

The trial was had in Colorado county. The residence of the witnesses is alleged, of the one, in Nueces county, of the other, in Hidalgo county. The residence of the witnesses being alleged to be in a county different to the one in which the trial was had, the process by subpœna was not the means to be used to obtain the presence of the witnesses: resort should have been had to an attachment. The statute authorized it. (Paschal's Dig.; Arts. 2908, 2909.)

The applicant for continuance relied on the process of subpœna in this emergency. The reliance on subpœna was not sufficient. It was not diligence. (Paschal's Dig., Art. 2987, 2d subdv.)

The statement that subpœna had issued at his (appli-cant's) instance for the witnesses named, residing, as they were alleged to do, in counties different to the one in which the trial was had, was in effect to omit *in toto* the require-ment of the second subdivision of article 2987 in the application for continuance.

Imagine an application with the requirements of that second subdivision left out altogether! Would it, under any view, in any case, be held to be sufficient? In every case it would be overruled. So it is contended here. To state that the process by subpœna had been resorted to and relied on under the facts of the case, was to state that nothing had been done, and at the same time fail to excuse the non-action to the court.

It is true, perhaps, that in some cases, under some cir-cumstances, it would be safe for an applicant for a contin-uance to tell the court that he had used no diligence, and give his reasons why he had failed to act; but in every such case, I may well say, that it would be required of such applicant to state all the facts, in order to show to the mind of the court that the action would have been fruitless. Did the applicant in this case do so? He did not. On the contrary, he confesses that he did not use the means the law places in his hands to bring his witnesses into court, and at the same time fails to state why he did not use them. He uses no diligence whatever, at least none that the law recognizes, and does not state why he has failed to act. How can the court hold the application a good one? Upon what principles?

It is not for the applicant to state that "he has used due diligence." He must state the diligence, so that the court may say whether he has done what the law required of him. He must put the court in possession of his acts, so far as they have tended to bring the witnesses into court. To fail to do so, is to forfeit the continuance applied for.

Has the applicant in this case complied with the demands

of the law? He did nothing that the law required him to do. In doing nothing that the law required, in law he did nothing. He has made no explanation, given no excuse for his negligence.

The affidavit should have shown the issuance of an attachment, and that proper efforts had been made to execute it and bring the witnesses into court; or, that it was useless to act, because impossible to reach the witnesses, stating the reasons why it was impossible, giving the distance witnesses resided from the place of trial, and other facts which would show it to have been impossible to reach and bring the witnesses.

The court did not judicially know the distance from Colorado to the counties of Nueces and Hidalgo. So far as the court knew, those counties might have been but a few miles off comparatively, and a very few days only might have been necessary to have brought in the witnesses. But this matter was not touched in the affidavit. The trial was not of necessity compelled to come on on the very day on which the case was tried. Preceding cases might have taken up more of the time of the court, and thus given a greater length of time in which to return the process sent for the witnesses. The applicant did not know on what day his trial would come on; hence the direct requirement of the law, that due diligence shall be used to reach the witnesses. In this case, although ten, twenty, or fifty days had elapsed from the time of applicant being indicted to the day of trial, he would have used no diligence the law recognizes, unless he had changed the character of the process. If to use the subpœna where witnesses live out of the county where the trial is had would be no diligence after the lapse of ten or fifty days, surely it would not be diligence where there were fewer days in which to execute and return process.

Applicant for continuance failed to comply with the law, and the court below would have been fully warranted by

the law, had the application been overruled when presented. The court would have been warranted in so overruling the application, on the grounds herein presented, without having recourse to the large discretion vested in the court in passing on such motions, and independent, too, of the many suspicions which crop out from all the circumstances in the case, that the continuance was sought for delay alone, and not that justice might be done.

If, then, the State be right, and the law with her on the point presented, the court below was correct in its ruling, (overruling the application for continuance,) no matter what reason may have moved the court to make it. The fact that the court below overruled the motion to continue for a particular reason, does not confine this court to that reason; the whole record may be looked to.

If the continuance was defective, not sufficient under the statute, then all the questions springing from the bill of exceptions are quieted, for they would no longer have any significance. The second and third questions which suggest themselves to the court from the bill of exceptions are based on the supposition that the application for continuance was good in law.

The application being insufficient, it is claimed by the State that appellant had no cause to object to the manner in which the district attorney made the admissions complained of; because, if the application was bad, it was the merest gratuity for any admissions to be made. Under the law, the defendant was required to go on to trial after his motion was overruled, without any right whatever to demand either that the witnesses would swear to any particular facts, if present, or that any particular facts were in fact true; and, as said before, to make the admissions at all was simple gratuity.

The rule in civil cases touching continances is, that " due diligence" must be shown. The facts must be stated. (Mays v. Lewis, 4 Tex., 1.) The diligence must be shown,

(Wentworth v. Crawford, 11 Tex., 132; Green v. Crow, 17 Tex., 182; Lewis v. Williams, 15 Tex., 49;) or good cause shown for not using diligence. (Payne v. Cox, 13 Tex., 481.) Numerous decisions of the court may be cited to the same purport.

The rule is the same in criminal cases. (Hyde v. The State, 16 Tex., 423.)

Where the witness resides in another county to that in which the trial is held, it is not sufficient to have caused subpœna to issue. In criminal cases attachment must be resorted to; and in civil cases deposition should have been sought. (Paschal's Dig., Art. 2987; Baker v. Kellogg, 16 Tex., 118.)

The reason for scrutinizing the application for continuance in criminal, even more rigidly than in civil cases, is apparent. The motive for delay is the greater. Delay acquits more guilty parties than any other cause. It is more effective than a well-conducted defense.

The refusal to grant the continuance in this case was right, and was in furtherance of the ends of justice. Respectfully, I submit that the ruling should be approved by this court.

II. If the continuance could legally have been granted on the application, was the court authorized, by principle or precedent, in ruling the defendant to trial on the district attorney proposing to admit, "that if the witnesses were present, they would swear to the facts as stated in the affidavit."

The rule on this point has never been settled in this State. It was incidentally before the court in the case of Hyde v. The State, 16 Tex., 423. In that case it was strongly intimated by the judge delivering the opinion, that simply to admit, if the witnesses were present, they would swear to the facts stated in the application, would not be sufficient to defeat the motion to continue. Reference was made to the case of Vermilyea v. The People, 7

Cowen, 368, and the rule there laid down by the majority opinion in effect approbated. But the rule was not settled. It still stands open. The distinction is made between "admitting that if the witnesses were present they would swear that the facts embodied in the application to continue are true," and admitting "that the facts stated in the application are true." The distinction is a wide one; and, to avoid the continuance under this rule, places the applicant for a continuance in a much better position than if he had his witnesses on the stand. If the witnesses were present, the adverse party would be privileged to impeach their testimony, and also to prove facts and circumstances to rebut what they might swear to; but, under the operation of the rule as insisted on by the appellant, and as laid down in 7 Cowen, such would not be the case.

Mr. Justice Sutherland dissented from the majority opinion in 7 Cowen, before cited, and presents the propriety of a different rule to that laid down by the court in a strong light, and enforces his views with cogent reasons.

The rule, either way, is extreme, and often works hardship, according to the circumstances of each case. If a medium line could be adopted, the ends of justice would be subserved.· The court trying the case should be vested with discretion on this point which, soundly exercised, would often defeat the aims of criminals, and, at the same time, permit sufficient delay to manifest every meritorious defense.

The brief of the attorney general in the case of Hyde v. The State is respectfully called to the attention of the court.

III. If the application for continuance in this case was improperly overruled, is the court authorized to look to the evidence to find certain guilt, and, finding it, refuse a new trial, notwithstanding the error in overruling the motion to continue?

In the case of Cooper v. The State, (19 Tex., 459,) the

court said: "If the case depends upon circumstantial evidence, the defendant is entitled to every fact, however feeble; and although there may have been no seeming error in overruling the motion for a continuance, yet, if the whole evidence showed that the absent witness was material, the overruling the motion for a continuance will be good ground for a new trial." Reverse the rule. If the whole evidence show, beyond any reasonable doubt, that the defendant is guilty, then the seeming error of overruling the motion for continuance will not be good ground for a new trial.

If the rule be good in one direction, it must be good in the other. There is reason in the rule. It would be a senseless formula to grant a new trial, when another trial would result in the same verdict. I grant that the court must be fully satisfied the verdict is right, and would be repeated on another trial, before it would be justified in ignoring the defense set up by the criminal in his application to continue. But if the evidence on the trial be of a character to satisfy the mind beyond a doubt of the guilt of the prisoner, then it matters not that he has not been permitted to introduce evidence that would have been overwhelmed by the adverse testimony.

Suppose, in this case, that these two men, one from Nueces and the other from Hidalgo, had come into court and sworn to the matters stated as facts in the application to continue, would their statements have delayed the jury even for a time in coming to the conclusion they did of the prisoner's guilt?—no difference that the testimony would have been of a positive character, and, if true, a complete defense. The jury could not and would not have believed them in the presence of all the circumstances and facts, which, mingling and converging together, irresistibly produced the conviction that appellant was a guilty man.

If the court erred in overruling the motion to continue, (erred in matter of practice,) it is respectfully submitted,

that the evidence on the trial comes to the rescue of the court, and cures whatever of error there was, and makes the conviction a good one, in regular conformity to the law.

IV. One other point deserves short notice. It is the assignment of error, charging error in the court in admitting the evidence of George Metz.

It does not lie in the mouth of appellant to object to that testimony. Every word of it was on the line of defense stated in affidavit for continuance, and was in substance what he wished to prove by his absent witnesses. What cause of complaint had he? Did that testimony in any manner or to any extent predjudice him before the jury? or did the jury, in coming to their conclusion that he was guilty? Not so. On the contrary, if any effect resulted, it was in his favor, not against him. He cannot complain.

Donley, J.—This cause being called for trial, and the State having announced itself ready, the appellant applied for a continuance for the testimony of two witnesses, by whom, it is stated, he expected to prove that said witnesses were present and saw him purchase the horse which he is charged to have stolen, and that he paid the parties from whom he purchased a valuable consideration for the horse. The application for a continuance was held sufficient. When the district attorney proposed to admit that, if the witnesses were present, they would swear to the facts stated in the affidavit for a continuance, (not, however, admitting the statement to be true,) the appellant declined to accept the admission, and insisted that it should be, that the facts stated in the affidavit were true. The court overruled the application for a continuance upon the admission that the witnesses, if present, would swear to the facts stated in the application.

The attorney general questions the correctness of the ruling granting the order of continuance on the affidavit of

the defendant, and says that it was insufficient; that the witnesses are alleged to reside out of the county in which the prosecution is pending, and that sufficient diligence was not used to obtain the witnesses. By articles 437 and 437*a*, Code of Criminal Procedure, it is provided, that where the witness resides out of the county in which the prosecution is pending, the defendant shall be entitled, on application under oath, stating facts, as required in the articles cited, to an attachment. And article 515 provides, that the issuance of or application for a subpœna shall not be considered due diligence in case where the law authorizes the issuance of an attachment. [Paschal's Dig., Arts. 2908, 2909.] The diligence stated in the application is not in compliance with the statute. Facts, however, are stated which show that in this case the attendance of witnesses could not have been procured by the use of the utmost diligence. It is stated that sufficient time had not elapsed for the subpœnas to have been served upon the witnesses and for the witnesses to have come to the place of holding the court, and, from the facts before us, we cannot say that there was time sufficient; and if there was not time for the subpœna or attachment to be served, and the witness to travel to and be in attendance on the court, the continuance might properly be granted, if there had not been any attempted diligence as required by statute, where it is stated, and appears to the court, that the testimony of the witnesses could not have been obtained by using the greatest diligence, if the witness reside at such a distance from the place of trial that it was impossible to have procured his attendance at the court as a witness on the trial. The statement of such facts in an application for a continuance may dispense with a statement of the acts of diligence required by the statute. If the witness was absent from the State at the time of the arrest, and remained away till the time of the trial, the statement of those facts must be held as dispensing with a

statement of acts of diligence which might be required if the witness was within the jurisdiction of the court. And if the witness be in the State, but at a distance from the place of trial so great that a statement of the facts shows clearly that it was not possible to obtain his attendance or testimony by using the greatest diligence, such facts, appearing to the satisfaction of the court, must be held as dispensing with the issuing and sending process that cannot possibly be executed in time to secure the testimony of the witness.

The granting a continuance must be held as reposing discretion in the court granting it, and the action of the court in continuing a cause cannot, as a general rule, be reversed; possibly it might in a case like the present, if the ordering of continuance is first made without any legal and sufficient cause authorizing the continuance, and the order granting the continuance is afterwards set aside for an insufficient cause. Yet if, from the whole record, it should appear that as a whole the action of the court is right, it might be sustained.

It is sufficient to say, that it does not appear from the record in this cause that the court erred in the first instance, in holding the application to continue sufficient. It is stated that sufficient time had not elapsed for the subpœnas to reach the counties to which they were sent, and service had on the witnesses in time for them to be in attendance upon the court at the time of the trial. If this statement was true, and we are not prepared from the record to say that it is not, the appellant was entitled to a continuance.

If the order of continuance was properly made, was it competent for the court to set aside the continuance and require the defendant to go to trial on the admission of the district attorney that, if the witnesses named in the affidavit were present, they would testify to the facts stated

in the affidavit, without requiring of the attorney representing the State the further admission, that the facts stated in the affidavit for a continuance were true?

Article 518, Code of Criminal Procedure, provides, that it shall be sufficient, on the first application for a continuance, that the facts expected to be proved by a witness shall be stated, and that it must appear that the facts are material. There is no provision in the statute that, if the applicant shall state facts which entitle him to a continuance, he may be required to be placed upon his trial, if the admission be made that the witness, if present, would testify as stated in the affidavit, leaving the truth of the statement to be controverted by other testimony, or by such means as the party opposing the continuance may be able to bring to bear on the question involved.

In Hyde v. The State, 16 Tex., 457, it was held, that the court erred in receiving the admissions of the State's attorney, that the witness would testify as stated by the defendant, and on their admission requiring the defendant to be placed upon trial; that the admission, as to what the witness would testify, would not be a sufficient ground for refusing the motion for a continuance, if the application was otherwise sufficient, and it satisfactorily appeared that the defendant was entitled to the postponement of the trial to obtain her testimony.

Reference is made to The People v. Vermilyea, 7 Cow., 368. That case is much like the case now under consideration. The defendant moved to put off the trial, on the ground of the absence of a material witness, which the judge decided should be granted; but, on the district attorney offering to admit "that the witness would swear what the defendant averred, reserving the right of contradiction and impeachment, the judge directed the defendants to specify what Swift, the witness, would prove, and on receiving such specification ordered the trial to pro-

ceed." The defendant was convicted. On appeal, the court say: "If it be admitted that the defendants were entitled to the testimony of the witness, then the only question is, had they the benefit of his testimony? In my judgment most clearly they had not. When testimony was given, showing, *prima facie,* that the witness could not swear, as it was admitted he would, without being guilty of a contradiction, could the jury shut their eyes to the fact, which was staring them in the face, that General Swift had not sworn anything about it."

In Goodman v. the State, 1 Meigs, 197, it is held, that "when the admission of the counsel is not merely that the witness would testify as stated, but admits the facts are true as set forth in the affidavit, such admission should not preclude the defendant in a criminal case from his constitutional right of having the witness personally present at the trial." It is so.

"It were needless to urge upon practical and enlightened minds the difference, in point of legitimate effect, between the personal presence of candid and respectable witnesses, who testify to facts in their detail, ramification, and bearing, and the general admission of these by an attorney general, little impressing the minds of the jury, and constituting, as to its extent and bearing, a fruitful source of difficulty and dispute."

In the case now being considered, the ruling of the court deprived the defendant of the benefit of having the witnesses before the jury. A subsequent ruling of the court was calculated to lessen the credit, if it did not destroy the effect, of the admission, that if the witnesses were present they would testify to witnessing a transaction between the defendant and certain other persons, in which transaction the defendant obtained the horse he is alleged to have stolen from the persons referred to. On the trial, it was proposed to prove by the justice of the peace before whom the de-

fendant was tried, with a view to his commitment for the offense alleged against him, that after the testimony was all taken, and the case closed, the defendant made a speech, in which he stated "that he traded for the horse of two men by the name of Hutton and Brown, in the prairie between Alleytown and San Felipe, and that no other person was present when the trade was made;" that "witness did not warn the defendant that the statement might be used against him on a final trial of the cause." At the time of making this speech the defendant was in custody of the officers of the law.

By act of February, 1860, Art. 662, Code of Criminal Procedure, is amended to read as follows: "The confession shall not be used, if at the time it was made the defendant was in jail or other place of confinement, nor while he is in custody of an officer, unless such confession be made in the voluntary statement of the accused, taken before an examining court, in accordance with law; or be made voluntarily, after having been first cautioned that it may be used against him; or, unless in connection with such confession he makes statement of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or instruments with which he states the offense was committed." [Paschal's Dig., 2d ed., Art. 3127, Note 761.]

The truth of the statement made by the appellant is not confirmed by any testimony, except his own affidavit for a continuance. The affidavit confirms the statement testified to before the justice in this, that the horse was obtained by the defendant from persons he met with on the prairie; but it conflicts in stating that two persons were present at the time of the meeting on the prairie. With this conflict it is not likely that the jury gave much weight to the admission of the district attorney as to the facts the absent witnesses of the defendant would testify to if pres-

ent.    The effect of the ruling of the court, in requiring the defendant to be placed upon his trial upon the admission made by the district attorney, and overruling his objections to giving in evidence statements made by him while in custody, was to deprive him of a legal right; for which error the judgment is reversed, and the cause

REMANDED.