TERRITORY, respondent, *v.* HARDING, appellant.

JURY — *Grand jury* — *Qualification of juror* — *Affidavit* — *Revised Statutes Montana, section 780.* — An affidavit in a criminal case which alleges that one of the grand jurors finding the indictment was not, at the time, a citizen of the United States, does not show any illegality in the proceedings, without further alleging that the juror had not declared his intention of becoming a citizen, as Revised Statutes Montana, section 780, page 571, only requires citizenship, or declaration of. intention, as a qualification for service on the grand jury.

SAME — *Waiver of objection* — *Revised Statutes Montana, section 121, page 305.* — Under Revised Statutes Montana, section 121, page 305, providing that a person held to answer for an offense shall be brought into court before the grand jury is sworn, and be informed of his rights in regard to challenging the jury, and that if he " then fails to challenge the grand jury, or any member thereof, he shall be deemed to have waived all objection to the same," a defendant who is shown to have expressly

waived his right of challenge cannot afterwards object that one of the grand jurors was not a citizen of the United States, although he did not learn that fact until after the indictment was found and returned into court.

CRIMINAL LAW — *Special prosecuting attorney — Power to appoint — Signature to indictment — Revised Statutes Montana, sections 57, 156.* — The district court of Montana, being a court of general criminal jurisdiction, may, in the absence of the district attorney, appoint a special prosecuting attorney for a particular case, whose signature to the indictment will be sufficient, although Revised Statutes Montana, section 57, page 414, declaring the duties of the district attorney, requires him to sign " all bills of indictment;" section 156, page 309, providing, with regard to the requisites of an indictment, that it must be signed by "the attorney prosecuting."

CONTINUANCE — *Criminal case — Absence of witnesses — State's admission regarding their testimony.* — Defendant in a criminal case has no right to a continuance on account of the absence of material witnesses if the prosecution is willing to admit that, if the witnesses were present, they would testify as set forth in the affidavits, and to allow the statements in the affidavits to be read in evidence as and for the testimony of the absent witnesses. Bach, J., dissenting.

*Appeal from Second District, Beaverhead County.*

INDICTMENT for murder. Conviction below. Defendant appeals.

. CAMPBELL & DUFFY, for the appellant.

ROBERT B. SMITH and C. W. TURNER, for the respondent.

WADE, C. J. This is a case of murder, and the defendant is under sentence of death. He asks to have the judgment against him reversed for the following reasons, viz.: *First,* that one of the grand jurors who composed the grand jury that found and returned the indictment against him was an alien; *second,* that the indictment was not signed by the district attorney of the second judicial district; and, *third,* that the court erred in overruling his motion for a continuance.

1. In support of the proposition that the indictment was found by a grand jury not legally constituted, the defend-

ant made and filed an affidavit setting forth that one Lambert Eliel, who was a member of said grand jury, was not, at the time he so acted as such, a citizen of the United States, and that the defendant did not have knowledge of this fact until after said indictment had been found and returned into court. The territory does not controvert this statement by the defendant, and, for the purposes of this case, it must be taken as admitted that the said Eliel, at the time of so serving on said grand jury and the finding and return of said indictment, was not a citizen of the United States, and that this fact was unknown to the defendant at that time.

A person who is not a citizen of the United States and has not declared his intention to become such cannot lawfully serve as a grand juror in this territory, if advantage of this disability is taken at the proper time. But our statute provides that any male person of lawful age, who is a citizen of the United States, or who has declared his intention to become such, who is a tax payer and a *bona fide* resident of the county, shall be competent to serve as a grand or trial juror. R. S. § 780, p. 571. The defendant does not question the validity of this statute.

It does not appear in the record, and there is no intimation or claim anywhere, that this grand juror had not declared his intention to become a citizen. The presumption is that the board of county commissioners, whose duty it is to select grand jurors, performed their duties according to law and selected grand jurors having the qualifications prescribed by the statute until the contrary is made to appear. Therefore, if a defendant proposes to attack the competency of a grand juror, he must cause his incompetency to appear. The record in this case is an admission that the grand juror, Eliel, had declared his intention to become a citizen, and therefore that he was a competent grand juror.

Aside from all this, it conclusively appears from the record that the defendant, in pursuance of the statute, was given an opportunity to object to said grand jury, and

thereupon waived all challenges to the panel and polls of said jury. The record recites "that, at the impaneling of the grand jury aforesaid, the defendant was personally present in open court and was also then and there represented by counsel, and then and there waived all challenges to the panel and the polls of said grand jury." Our statute provides that "when a party has been held to answer for an offense, and is in custody of the officer, it shall be the duty of the judge presiding, before the grand jury is sworn, to direct the sheriff of the county to bring such person into court and there notify him of his rights in relation to the challenging of the jury, and, if necessary, to appoint counsel for him. If such person then fails to challenge the grand jury, or any member thereof, he shall be deemed to have waived all objection to the same." R. S. § 121, p. 305.

The defendant knew for what he was brought into court, for he answered and said that he waived all objections to the panel and to the polls of the grand jury. Having had this opportunity, and failing to exercise his right of challenge, the statute declares that he thereby waives all objections to the grand jury. If, after failing to exercise his right of challenge,— if after looking upon the grand jury and thereafter waiving all objections to the same,— he thereby declares himself satisfied with the grand jury, and asserts his willingness that each and every member thereof should examine his case, and he thereby promises to abide the result of such examination; if, after looking upon the array of grand jurors and making no objection to any one of them, and he thereafter ascertains that one of the grand jurors is not a citizen, or has not declared his intention to become such,— his after-acquired knowledge conclusively shows his neglect and laches in making the proper inquiries at the time the opportunity was given him of exercising his right of challenge. At that time the very least amount of diligence and care would have prompted the inquiry of each of the jurors if they were citizens of the United States,

or if they had each declared their intention to become such. And so, if the defendant was indicted by an incompetent grand jury, it was his own neglect that brought about this result; and having in effect declared before the grand jury was sworn that he was satisfied with each member thereof, and content to have them investigate and pass upon the charge against him, so far as to say whether or not he should be formally accused of crime, it is now too late for him to object to said grand jury, and his right is gone.

2. The statute provides that " each indictment must be signed by the attorney prosecuting." R. S. § 156, p. 309. Objection is made to this indictment for that it was not signed by W. Y. Pemberton, the district attorney for the second judicial district, or by C. J. Walsh, the deputy district attorney for that district, but that it was signed by " Robert B. Smith, special district attorney for second judicial district, Montana territory, appointed by the court to prosecute in the above-styled cause," and therefore that said indictment is void.

The authority of Robert B. Smith in the premises came from an order and appointment by the court, as follows:

" IN THE DISTRICT COURT OF MONTANA TERRITORY, COUNTY OF BEAVERHEAD.

" *Territory of Montana* v. *Thomas H. Harding.*

" ORDER OF COURT.

" At a regular term of the district court of Beaverhead county, Montana territory, it appearing to the court that W. Y. Pemberton is absent from the county of Beaverhead, and that there is no qualified or acting prosecuting attorney for the territory now present at court, it is therefore ordered by the court that Robert B. Smith, Esq., be, and he is hereby, appointed to represent the territory in the above-entitled cause, and to prosecute the same both before the grand jury and on the trial thereof."

The statute also provides that the district attorneys for each district shall be public prosecutors in their respective districts, and shall sign all bills of indictment that may be

found by the grand jury. R. S. § 57, p. 414. It is further provided that the indictment shall be sufficient if it can be understood therefrom that the indictment was found by the grand jury of the county in which the court is held; that the defendant is named or described in the indictment as a person whose name is unknown to the grand jury; that the offense was committed within the jurisdiction of the court, or triable therein; that the offense charged is clearly set forth in plain and concise language, without repetition; and that the offense charged is stated with such a degree of certainty that the court may pronounce judgment upon conviction, according to the right of the case. R. S. § 170, p. 311. The statute also provides that the indictment shall be set aside by the court in which the defendant is arraigned, upon his motion, in either of the following cases: When it is not found indorsed or has not been presented as prescribed by this act (Criminal Practice Act); where the names of the material witnesses examined by the grand jury are not inserted at the foot of the indictment, or indorsed thereon; when any person has been permitted to be present during the session of the grand jury while the charge embraced in the indictment was under consideration, except those allowed by law. Id. § 305, p. 315.

The expression of these particulars would seem to be the exclusion of all others; and if the indictment contains what the statute requires, and is not obnoxious to any of the particulars above named, then it cannot be attacked by a motion to quash, or, if it is, such a motion ought to be overruled. The failure of the district attorney to sign an indictment would not, therefore, seem to be a fatal omission; but be this as it may, the indictment in this case was signed by Robert B. Smith, the attorney prosecuting, deriving his authority so to do from the foregoing order of court; and this presents the inquiry whether the court possessed the power and authority to make such an order. There seems to have been no objection to the appointment of Smith. The necessity for such an appointment appears in the order.

The recitals therein are like the findings or judgment of a court, and cannot be attacked by a mere affidavit after the fact. If the district attorney had been present, or if his attendance upon court could have been procured, the fact ought to have been made known pending the appointment of Smith. This seems to have been the situation: The district attorney was absent from the county, and there was no one present qualified to act as prosecutor for the territory. Thereupon the court appointed Robert B. Smith to represent the territory and to prosecute this cause.

No doubt it is the duty of the district attorney to attend court, to sign indictments, and to prosecute for the territory. But if he fails to do his duty; if he absents himself from the county, or is present, but disqualified from acting either from sickness or for any other reason, must the wheels of justice stop and the administration of the criminal law be suspended? Is the court powerless if one of its officers fails to perform his duty? We think not. We believe that if a court, having general common law jurisdiction, is established by law, and a judge is lawfully elected or appointed to preside over such a court, such judge has the inherent right and authority to do every act proper and necessary to set such court in motion and to bring causes to trial and judgment. He may provide grand and trial jurors, and have them summoned into court; he may issue process for witnesses; he may appoint an executive officer to serve processes and orders; he may appoint a clerk to authenticate such acts with his seal of court and to keep the records; and he may appoint a prosecutor to represent the territory or commonwealth in criminal causes, to sign indictments, and to prosecute before a trial jury. All these powers necessarily flow from the establishment of a court of general jurisdiction according to law, and the lawful appointment or election of a judge to preside over such court. The legislature must have had these powers in contemplation; and also the fact that criminal cases might arise in which the public prosecutor might, for some reason, be dis-

qualified or disabled; for in the making and enactment of
the criminal practice act, in many sections it is expressly
provided, not that the district attorney shall sign indict-
ments, but that the "attorney prosecuting" shall sign them.
Why authorize the "attorney prosecuting" to sign indict-
ments if, in all cases, indictments must be signed by the
district attorney? Suppose it became necessary to indict
the district attorney. He could not be removed or com-
pelled to resign because he had been bound over to await
the action of the grand jury. Must the indictment and
prosecution against him fail because he refuses to sign the
indictment and prosecute himself? In such a case, or in the
absence of the district attorney, the court is clothed with
power to meet the emergency and to appoint a prosecuting
officer, who, for the time being, becomes the "attorney
prosecuting," and thereby authorized to sign indictments.
By the organic act of the territory, the district courts are
given common law and general criminal jurisdiction. This
jurisdiction they are bound to exercise. They are bound to
try and to determine criminal causes, and this can only be
done through the instrumentality of grand juries, indict-
ments, and attorneys prosecuting for the territory.

In the case of *Clawson* v. *United States*, 114 U. S. 487, the
supreme court of the United States says: "A *venire* to sum-
mon jurors is a writ necessary to the exercise of the juris-
diction of the court, and agreeable to the principles and
usages of law, where it is not forbidden or excluded, and
where the affirmative provisions of law have, so far as they
extend, been first observed. In the case of *United States* v.
*Hill*, 1 Brock. 156, Chief Justice Marshall, speaking of the
law as it then existed, says: 'It has been justly observed
that no act of congress directs grand juries or defines their
powers. By what authority, then, are they summoned, and
whence do they derive their powers? The answer is that
the laws of the United States have erected courts which are
invested with criminal jurisdiction. This jurisdiction they
are bound to exercise, and it can only be exercised through

the instrumentality of juries. They are, therefore, given by a necessary and indispensable implication. But how far is this implication necessary and indispensable? The answer is obvious. Its necessity is co-extensive with that jurisdiction to which it is essential.' "

If a court, having general criminal jurisdiction which it is bound to exercise, and is charged with the duty of trying criminal causes, which duty can only be performed or jurisdiction exercised through the instrumentalities of grand juries, and the law failing to provide such instrumental.ty, has, by necessary and indispensable implication, authority to provide and summon grand juries, then, in such a case and by a similar implication when the necessity arises, and the district attorney is absent or disqualified and the law fails to provide for such an emergency, the court has the power to appoint an attorney to prosecute and to represent the territory, so that the jurisdiction conferred, and which is bound to be exercised, may not fail. This power comes from the law which has created our district courts and invested them with general criminal jurisdiction, which they are bound to exercise and which can only be done through the instrumentality of prosecuting attorneys. This implied power can only be exercised in cases of necessity and in cases for which the law has failed to provide; and then it is co-extensive with the jurisdiction to which it is essential. If the district attorney had been present and not disqualified, no necessity would have arisen to call into exercise this implied power of the court; but in his absence and in the absence of any one authorized to prosecute for the territory, and the law failing to provide for such a case, it was the exercise of lawful authority for the court to appoint a suitable person to represent the territory and prosecute the action, who, for the time being and for the case in hand, became the "attorney prosecuting."

3. After the indictment had been returned, the defendant arraigned, and his plea entered, he made a motion for a continuance until the next term, because of the absence of ma-

terial witnesses whose testimony, or what was expected to be proved by such witnesses, was set forth in affidavits made by the defendant, accompanying said motion. Thereupon the prosecution admitted that if said witnesses were present they would testify as set forth in said affidavits, whereupon said motion for a continuance was overruled, the cause went to trial, and said affidavits were read in evidence to the jury, on behalf of the defendant, as and for the testimony of said absent witnesses. Under those circumstances the defendant says that the overruling of his motion for a continuance was error, and his counsel in their brief maintain that the defendant was entitled to the personal attendance of his witnesses to be examined orally in court, and to confront them with those called to impeach their evidence. This branch of the case is precisely parallel to that of *Territory* v. *Perkins*, 2 Mont. 470, decided by this court more than ten years ago, and to which decisions in the district courts since then have conformed. We see no reason for disturbing or modifying that decision in any respect, and confirm it.

The accused has the right to confront his accusers, but it does not follow therefrom that the witnesses for the defendant have the right to confront the witnesses for the prosecution. It is safe to say that a defendant will make a much better case for himself in his affidavit for a continuance than he could with his witnesses in court; and if, notwithstanding what he says he can prove in his affidavit, the territory is willing to go to trial, and to admit that his witnesses would, if present, testify as he sets forth, no injury could be done to the defendant. If his witnesses were not myths, if they really had being and existence, he would generally gain more than he would lose, by not exhibiting them before the jury. It is easy enough for a defendant to set forth in an affidavit the names of witnesses who are absent from the territory, and in *a foreign* country, as in this case,—and the higher the crime the further away the witnesses are generally declared to be, — and if such shadowy showing can compel the continuance of criminal cases, then

there can be no more criminal trials in this territory. The defendant should be given a reasonable opportunity to prepare for trial, and to procure the attendance of his witnesses, if the court is satisfied that he has any witnesses, and that his application for a continuance is not a sham. The trial court should exercise a sound and legal discretion in this regard. No guilty man is ever ready for trial. Every continuance of his cause brings him so much nearer to an acquittal. The trial court must judge whether his application for continuance is made merely for delay, or in good faith, to the end that justice may be done; and unless there is an abuse of legal discretion in this regard, appellate courts will not interfere.

We do not think the rule in the *Perkins Case* could ever work an injustice or hardship to a defendant, and generally in its operation it would give him a very great advantage. If his witnesses are out of the territory, or in a foreign country, he could not compel their attendance upon his trial, and he would be obliged to take their depositions, which he would have the right to do, but which when taken would be no better than the testimony set forth in his affidavit for a continuance. If the affidavit should state the truth, the deposition would, in effect, be just like it, and one would be no more beneficial than the other to the defendant.

A different rule prevails in Texas and some other states; but in those states they have no statute similar to our own, under which the *Perkins Case* was decided.

The defendant had a fair and impartial trial under the statutes and decisions of this territory. After a full consideration, the trial court refused a new trial, and, finding no error in the record, the judgment is hereby affirmed.

*Judgment affirmed.*

McLEARY, J., concurs.

· BACH, J. (*dissenting*). In the case at bar, I dissent on the ground that it was error for the court below to refuse the

motion for a continuance. I have consulted all the authorities accessible to this court, both text-writers and digests, and I have been unable to find any application of the rule *stare decisis* to sustain an erroneous decision in a criminal case. In discussing that principle, the courts and the writers always declare that the reason for the principle is that it is better to have a wrong but fixed interpretation of the law than to have a varying rule, because contracts are made under and titles depend upon the interpretation of the law by the courts; and it is further stated that to destroy the rule of law already established would be to do injustice to acts done in the past under the impression that the rule established would be permanent; and, further, that when it becomes necessary to destroy such a rule because it is erroneous, the legislature is the proper authority to do so, because it can repeal the rule and save all intervening rights. I cite no authorities upon this point because there is absolutely no authority to the contrary. But, as between the state and the citizen, surely such reasons should not hold the court to a strict adherence to decisions. There is no wrong done to any individual save Perkins by reviewing the rule in the case of *The Territory* v. *Perkins;* neither is there the sacrifice of any right acquired by any person under and by virtue of that decision. The party invoking that rule is the state, whose duty it is, whose wish it is, to allow to every person accused of crime an opportunity to establish his innocence. The state would not lose the right to try the defendant in this case, or to try any person already accused of crime, if the rule in the *Perkins Case* was set aside.

In *Mead* v. *McGraw*, 19 Ohio St. 55, this distinction is drawn. The court say (page 61): "On the trial the court was asked to charge the jury that, if they believed that the plaintiff had knowingly sworn falsely to any material fact or circumstance, it not only affected his credibility, but it was their duty to reject and disbelieve his entire testimony. This was refused." The opinion then recites the charge

given, and the court say (page 62): "The charge asked is substantially the third proposition laid down in the syllabus in *Stoffer* v. *The State*, 15 Ohio St. 47. The charge given is in conflict with it. The state of the evidence justified a charge from the court on the subject. We are therefore called upon either to reaffirm or overrule the decision made upon this question in *Stoffer* v. *The State*. We have not felt satisfied with the ruling in *Stoffer's Case* upon the case now in question. . . . This is not a case in which we should forbear to correct the error on the principle of *stare decisis*. It is not a rule of property that is involved, but a rule affecting the practical administration of justice, and which, if wrong, ought at the earliest opportunity to be corrected."

I dwell fully upon the doctrine of *stare decisis*, because I wish to express my respect for that principle, and the eminent judges who constituted this court when the *Perkins Case* was decided, even in the act of adversely commenting on that case. The case has never, as far as I can find, been reaffirmed in any case in our court.

In the *Perkins Case*, 2 Mont. 470, the learned judge says: "The statute provides that the court may grant a continuance for 'good cause,' and that 'any cause which would be considered a good one for a continuance in a civil case shall be considered sufficient in a criminal action.' The party who desires the continuance must file his affidavit 'showing good cause therefor.' A motion to postpone the trial of a civil case on account of the absence of evidence must be made upon affidavits showing that the testimony is material, and that due diligence has been used to procure it. If the adverse party admits that the evidence which the moving party expects to obtain be considered as actually given on the trial, the trial shall not be postponed." "It will be seen that the legislative assembly has made these provisions of the civil practice act applicable to criminal proceedings."

I cannot agree with the learned judge that the "legislative assembly has made these provisions of the civil prac-

tice act applicable to criminal proceedings." I think the learned judge has confused the expression, "any cause which would be considered a good one for a continuance in a civil case," as found in the criminal practice act, with that clause of section 244 of the civil practice act which provides for the refusing of a continuance of a civil action. Section 244, which the learned judge refers to, does not enumerate, does not specify, what are grounds for a continuance in civil cases. It merely declares what the practice shall be when the grounds for a motion for a continuance are "the absence of evidence." In such case it declares that the motion "shall only be made upon affidavit showing" certain facts required by that section. It in no way, except by inference, declares that "absence of evidence" shall be considered good ground for a continuance. It merely declares the practice in that particular kind of application for a continuance, and then provides that, when the application is made upon that ground, the court may require the moving party to state the evidence which he expects to obtain, and that, further, if the opposite party makes certain admissions, then the "time shall not be postponed." It is certainly evident that section 244 of the civil practice act merely declares the practice in motions for a continuance, and does not provide what the ground shall be; that it provides that in one class of motions, if certain admissions are made by the adverse party, the court shall refuse the motion; and that in other cases the "court may, in its discretion, upon good cause shown, . . . postpone upon other grounds than the absence of evidence."

To recapitulate, and to put the matter briefly, section 244 divides the practice upon such motion, in civil cases, into two classes. First class is that where there is absence of evidence, in which case the motion must be made upon certain affidavits, and the motion must be refused in those cases. Second class is composed of all other motions for a continuance. In this class "good cause must be shown," but not necessarily by affidavit in civil cases, and the court, in

this class, is not obliged to refuse, in any event. He may grant or refuse the motion, in his discretion. That the section referred to is merely a provision for practice, and is not an enumeration of the causes for a continuance, is apparent from this: The latter portion of that section certainly allows a motion to be made without affidavit in cases other than the absence of evidence; while section 269 of the criminal practice act requires that in all cases the motion must be made upon affidavit.

I am firmly of the opinion that the legislative assembly meant to provide, in the section referred to, what the act itself indicates, the practice upon motion; that it did not mean in those sections, or particularly by section 244 of the civil practice act, to enumerate what should be causes for a continuance of a trial; and that it meant to leave such causes to the courts of justice, and merely declare, by section 244, that in one class of motions in civil cases the court should not exercise its discretion to grant a postponement. And in leaving such causes to the inherent power of the courts the legislative power acted wisely; for no such body could imagine the infinite variety of facts which would, in certain cases, constitute " good cause shown " for a continuance.

If this is the correct interpretation,— and I am convinced that it is,— if section 244 of the civil practice act provides the practice, upon a motion for continuance, and not the cause for continuance, then it (section 244) does not become incorporated in the criminal practice act by virtue of section 270 of the latter act; and the second portion of section 244 of the former act, which takes away from the court the right to use its discretion in such motions on certain grounds in civil cases, does not take away or limit the discretion of the court upon any motion for a continuance in criminal cases.

If I am wrong in my interpretation, if section 244 of the Civil Code is embodied in the criminal practice act by virtue of section 270 of that act, then in no criminal case

whatever can the court allow a continuance ·upon the ground of the absence of evidence when the adverse party (the territory) makes certain admissions; for the court has no discretion. It must refuse .the motion. See the opinion of the learned judge in the *Perkins Case,* who says: " After the district attorney has admitted that Marshal would testify to the facts stated in the affidavit of the appellant, the court *could not* postpone the trial for the purpose of securing his attendance." And I will say, in this connection, that I am not criticising the use or abuse of discretion of the learned judge who presided at the trial of this cause. He was bound by the decision of the *Perkins Case,* which, as stated, declares that he had no discretion in the matter, but that he was bound to deny the motion when the prosecuting attorney admitted that the witnesses would testify to the facts set out in the affidavits used upon the motion for continuance. Of these two interpretations I believe the former is the correct — the only humane interpretation of the statutes.

In the case at bar the defense was *alibi,*— a defense which always arouses the suspicions of the jury, as all lawyers know, although why it should do so no lawyer can tell, except upon the ground that it is sometimes used as a last resort by those who have no other means of escaping the punishment they deserve. In such cases, above all others, then, is the defendant entitled to the *viva voce* testimony of his witnesses; to have the jury look upon those witnesses, and watch closely their manner and conduct upon the witness stand; to have such witnesses fix with certainty the time at which they saw the accused at a place other than that at which the alleged crime was committed.

By our statute (section 166, p. 310) the time of the commission of the crime needs not to be proved as alleged in the indictment, except where it is " an indispensable ingredient of the offense." Following the rule laid down in the *Perkins Case,* which takes away the discretion of the court

to grant a continuance in all cases where the adverse party makes the admissions specified in section 244 in any case of homicide, the prosecuting attorney could admit that witnesses would testify to the absence of the defendant from the place and at the time alleged in the indictment, and then he could completely destroy the defense of the accused by proving a time other than that alleged in the indictment, for time is not "an indispensable ingredient of the offense" of homicide.

I am of the opinion that in criminal cases of such a serious nature the accused should not be crowded to a trial; that he should be allowed time in which to procure his witnesses; that he should have time, after having read the indictment, and before his plea, to procure witnesses to meet the allegations of that indictment; that in all criminal cases the court should be allowed to use its discretion in granting or refusing a continuance, as is contemplated by the use of the word "may" in section 270 of the criminal practice act, and which the court below was prohibited from doing by the rule laid down in the *Perkins Case;* and that in cases where *alibi* is a defense, the first application for a continuance should be granted, unless the court below is firmly convinced that the motion is made in bad faith.

The proper rule in motions for continuance in crimimal cases, in my opinion, is contained in the following authorities: *People* v. *McCrory,* 41 Cal. 458; *People* v. *Diaz,* 6 Cal. 248; *De Warren* v. *State,* 29 Tex. 464.

In *People* v. *Diaz,* above cited, the court say: "The value of oral testimony over all other is too well understood to suppose for a moment that such declarations [admissions by the district attorney, as in this case] would have the same weight on the minds of the jury as the testimony of the witness if he had been examined before them in open court." This, I think, is the true rule, where the application for a continuance is the first made in the case,— made in good faith, and at the first term of the court at which the case could be heard; and the rule should be confined to

cases where the good faith of the application is not in doubt.

In the case at bar there was no defect in the motion papers. There was no claim of bad faith. The sole ground for refusing the motion was the admissions made by the prosecuting attorney, which, under the rule in the *Perkins Case*, deprived the court of the right to use its discretion, and necessitated a denial of the motion.

In my opinion such a denial was error, and the judgment should be reversed, and the case remanded for a new trial.