THE STATE OF NORTH DAKOTA, Respondent, v. J. G. JOHNSON, Appellant.

(214 N. W. 39.)

**Indictment and information — prejudice of grand juror — appearance of special prosecutor before grand jury.**

Before pleading in the trial court, appellant made a motion to set aside the indictment against him, on two statutory grounds, namely:—1. Bias and prejudice of a grand juror. 2. The appearance of an unauthorized person before the grand jury, during its deliberations resulting in the return of the indictment. Held, on the record, that it was reversible error not to grant such motion.

Opinion filed June 1, 1927.

Grand Juries, 28 C. J. § 97 p. 804 n. 96; § 99 p. 805 n. 12. Indictments and Informations, 31 C. J. § 382 p. 806 n. 65; § 384 p. 807 n. 81.

Appeal from the District Court of Ward County, *Lowe*, P. J.
Reversed.

*Nestos, Herigstad, & Stenerson,* for appellant.

"Fairness and justice demand that the criminal prosecution should be at all times under direction of a regularly appointed public officer who is charged by law with performance of his duty." Hargraves v. State, 5 Okla. Crim. Rep. 266, 3 L.R.A.(N.S.) 568, 114 Pac. 343; Ex parte Corliss, 16 N. D. 470; State ex rel. Miller v. District Ct. 19 N. D. 819.

"Proof of a mere failure to pay over money, standing alone, will

Annotation.—Bias and prejudice as ground for challenge of grand juror, see annotation in 28 L.R.A. 200; 12 R. C. L. 1031; 5 R. C. L. Supp. 670.

not support a judgment of conviction for embezzlement." Blake v. State, (Okla. Crim. Rep.) L.R.A.1917B, 1266, 160 Pac. 30

"When the proof introduced at the trial fails to establish the commission of the offense charged, the verdict of guilty and the judgment rendered thereon, as a matter of law, are contrary to the evidence." Blake v. State (Okla. Crim. Rep.) L.R.A.1917B, 1266, 160 Pac. 30.

"There can be no conviction of embezzlement unless the proof substantially supports the allegations of ownership and possession of the money or other property embezzled." 20 C. J. 480.

*B. L. Wilson,* state's Attorney and *Wm. Lemke,* Special Counsel, for respondent.

"Interest in a particular prosecution other than a direct pecuniary interest will not disqualify a grand juror, or be a ground of objection to an indictment in the finding of which he participated." 28 C. J. § 25, p. 770.

"The interest of a grand juror has generally been held insufficient disqualification to render an indictment invalid, as that the grand juror was interested in a bank, in a charge of burglary, or embezzlement. . . ." State v. Rickey, 10 N. J. L. 97; Rolland v. Com. 82 Pac. 306; State v. Brainard, 56 Vt. 538. See subdivision 3 under "Interest," 28 L.R.A. 201.

"An adverse witness may be cross examined, and leading questions may be put to him by the party calling him. . . . The right to cross examine in such a case, however, is not absolute, but rests in the discretion of the trial court." 28 R. C. L. § 190, pp. 600, 601.

"As a criminal intent is the essence of all criminal liability, one who, although he may have been in fact a participant in the commission of a crime, acted without any criminal intent, cannot be regarded as an accomplice." 16 C. J. § 1349, p. 672.

"The corroboration of the testimony of an accomplice need not go to exery material fact to which he testifies." State v. Jones, 88 N. W. 196; State v. Wart, 2 N. D. 405.; State v. Dorsey, 134 N. W. 946; State v. Reilly, 22 N. D. 353.

WOLFE, Dist. J. An indictment was found by a grand jury of Burke county, charging the defendants, J. G. Johnson and Jim Uglum, with the crime of embezzlement. A separate trial was had after re-

moval of the case to Ward county of defendant, Johnson, alone, and he, alone, will hereafter be designated the defendant. Johnson had not been arrested or bound over, hence could not challenge the grand jury panel, or any member of it. When the indictment was returned, he was arrested on a bench warrant, admitted to bail, and, when arraigned, interposed a timely motion to set aside the indictment upon two principal statutory grounds, namely: (1) Disqualification of a specified member of the grand jury for bias and prejudice. (2) That a named, unqualified person was permitted to and did appear before such grand jury while deliberating upon such indictment and participate in the proceedings of such grand jury which culminated in the finding and return thereof. Hearing was had upon such motion, the evidence thereon being in the record; the motion was denied, a trial had, the defendant found guilty as charged, sentence was passed upon him, a motion for new trial made and denied, and this appeal is from the judgment of conviction, appellant assigning as error the overruling of the motion to vacate the indictment, with other errors.

A careful reading of the record satisfies us that the issue raised by the motion to set aside the indictment is determinative of this appeal and that issue, only, will be further noticed.

Section 10,641, Code 1913, provides: "A challenge to an individual grand juror may be interposed by either party, for one or more of the following causes only: (The first six stated causes are immaterial, here); "7. That a state of mind exists on his part in reference to the case, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging." (The remainder of this subdivision 7 is inapplicable, here).

Section 10,728, Code 1913, provides: "The information or indictment must be set aside by the court in which the defendant is arraigned, upon his motion, in either of the following cases: " (Parts of the section applying only to informations, and the first two grounds relating to indictments, are omitted as inapplicable, here). "3. When a person is permitted to be present during the session of the grand jury while the charges embraced in the indictment are under consideration, except as provided in § 10,666. 4. When the defendant had not been held to answer before the finding of the indictment, on any ground

which would have been good ground for challenge, either to the panel, or to any individual grand juror."

Section 10,666 referred to in the above exception, provides: "The grand jury may at all reasonable times ask the advice of the court or of the State's Attorney. The state's attorney may at all times appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable before them and may interrogate witnesses before them whenever he thinks it necessary; but no other person is permitted to be present during their sessions except the members and a witness actually under examination, and no person whomsoever must be permitted to be present during the expression of their opinions or the giving of their votes upon any matter before them."

In the case of State ex rel. Miller v. District Ct. 19 N. D. 819, 124 N. W. 417, Ann. Cas. 1912D, 935, this court held that this last section does not deprive the Attorney General, or his qualified assistants from appearing before a grand jury; so, when the indictment here involved was found, no one not a state's attorney of the county, his assistant, duly qualified, where such assistant may be appointed, the attorney general or his qualified assistant, a member of the grand jury or a witness actually under examination, could be lawfully permitted to be present during the sessions of this grand jury. Section 10,728 makes it obligatory on the court to set aside an indictment in case any other person does so appear, and the fact that he did appear and that he was disqualified are the sole criteria.

Upon the first ground of the motion, the disqualification of the grand juror, the record discloses these pertinent facts: One B. A. Smith, one of the grand jurors who returned the indictment assailed was a stockholder, director and vice president of First State Bank of Bowbells, which had failed, and the transaction upon which the indictment is based was a banking one, involving its corporate assets and liabilities to the extent of more than $2,500. The defendant had for several years been cashier of the bank and its managing officer. In 1920, he induced Mr. Smith to buy stock in the bank, for which Smith paid him a premium of 60 per cent above par. During the two years before the bank failure, Smith had a general understanding of the

business and affairs of the bank. He had signed depositary bonds for the bank and he had a checking deposit in it, when it failed, of about $2,000. When called to act as a grand juror, the bank had failed insolvent; Smith had lost his deposit; had been assessed 100 per cent on his bank stock, had become absolutely liable as surety on the depositary bonds, suits had been brought and judgments rendered against him, apparently on both the assessment and the bonds. It appears that the bank failure was one which, for some reason, created quite intense feeling in the community, to such an extent that it was one, if not the only, cause for calling a grand jury to investigate it, for the apparent purpose of placing the blame for the failure where it belonged and punishing those found to be wrongdoers.

The grand juror, Smith, on the hearing of the motion, testified on direct examination by the State, in substance that he at no time felt any hostility or unfriendly feeling or antagonism toward defendant, Johnson. He was then asked:

Q. "You were not prejudiced against him in any way that you know of?" Answer: "No, I was not, *in the jury room*."

On cross-examination, after testifying that defendant Johnson was in charge of the affairs of the bank for the last two years before it closed, he testifies as follows:

Q. "Of course it never entered your mind, then, that he was in any way responsible for the closing of the bank; and he was not in any way responsible for your losing your money, was he?" Answer: "Well, I didn't know."

Q. "That is, you never thought he was?" Answer: "Well, I have no means of knowing who was."

Q. "Well, did you have any feeling that he might to a certain extent be responsible for your losing your money?" Answer: "I didn't know."

Q. "Well, did it sometimes enter your mind that he might to a certain extent be responsible for it?" Answer: "Well, he might have. I don't know."

The trial court held the juror not disqualified, and denied the motion, on this ground. In this there was error.

What the juror may have said or done in the jury room is not the criterion. He may have acted conscientiously and fairly, even in spite

of his interest and state of mind; but the statute does not permit us to speculate upon that. It makes the existence of a certain state of mind fatal to the qualification of a grand juror when he enters upon the discharge of his duties. If that state of mind exists, his acting fairly and conscientiously in spite of it, can not validate an indictment which he finds. And what he may say about his lack of prejudice or bias must be considered in the light of our human experience. We know, if we stop to think about it, that the last thing in the world we will admit, even to ourselves, is bias or prejudice against another. We may not like him, or may hate him heartily, yet, as we are always in the right about it, we have no bias or prejudice against him. We are always confident that we can treat him fairly, considering that he is bound to be in the wrong; and we are honest enough in this belief in our own fairness and impartiality. There is a world of wisdom in the sage remark of the man who, before the late war, in discussing what ought to be our attitude toward the belligerents, said: "Personally, I am strictly neutral; I don't care who licks the Kaiser." The juror, Smith, says that he was not prejudiced against the defendant "in the jury room." What his feelings were outside that room, we must gather from the surrounding circumstances, measured in the light of human experience. The trial court seems to have based the ruling that the juror was not disqualified, entirely upon the fact that the juror said that he had no ill will, prejudice or antagonism against the defendant, apparently overlooking the surrounding circumstances and the juror's significant qualification of his statement. To hold this juror, on this record, qualified, is too great a strain on human credulity. The motion to set aside the indictment should have been granted, upon this ground.

When the grand jury was called, to convene January 5th 1925, and on December 22d, 1924, the county commissioners of Burke county adopted a resolution reciting the calling of the grand jury, the date of its convention, and proceeding:

"Whereas, it appears to the Board for the best interest of Burke county, it is expedient that the state's attorney be assisted by a special investigator and expert accountant, to be appointed by the district court for the purpose of said grand jury investigation; be it, therefore,

"Resolved that this board resolves itself into a committee to go to Minot for the purpose of interviewing attorney E. R. Sinkler to ascer-

tain whether or not it would be possible to engage him to act as such special investigator, in the event that he is thus appointed by the district court.

"Be it further resolved, that, in the event that attorney E. R. Sinkler is so situated that he is unable to serve in said capacity, that the board comprising the committee confer with attorney Wm. Lemke of Fargo, N. Dak., for the purpose of hiring him as such special assistant to the state's attorney together with an expert accountant in case the district court makes such appointments."

On December 30th, 1924, the county commissioners further resolved:

"Whereas, a grand jury has been called within and for Burke county, North Dakota, to convene on the 5th day of January, 1925; and

"Whereas, it is necessary in order that a proper investigation may be made of the affairs of the county to the end that a prompt and efficient report can be presented to such grand jury; therefore, be it

"Resolved, that the county employ a special investigator and an accountant to aid the said grand jury in making a speedy investigation of the conditions of said Burke county.

"Be it further resolved that the said county commissioners of Burke county, North Dakota, recommend the appointment of William Lemke as such special investigator and as such an accountant."

The state's attorney elect, who was not yet in office, but would be on January 5th, 1925, seems to have approved this resolution, in writing, as follows:

"I, B. L. Wilson, hereby approve the foregoing resolution and recommend the appointment of a special investigator and accountant."

William Lemke, Esq., of Fargo, Cass county, appeared before the grand jury, when convened, advised the jury, questioned witnesses being examined before that body and discharged the functions and duties usually performed by the state's attorney under such circumstances. The state's attorney was, at said time within Burke county, in good health, capable of acting and had not refused or neglected to act as state's attorney before this grand jury. Nothing further seems to have been done to qualify Mr. Lemke to so appear and act, until June, 1925, when the defendant made his motion to set aside the indictment, assigning the disqualification of Mr. Lemke as one ground.

The trial court, then, made an order purporting to be made nunc pro tunc as of January 2d, 1925, appointing Mr. Lemke "nunc pro tunc, special counsel to assist the state's attorney in the prosecution of complaints and to assist the grand jury at the January, 1925, term of the district court."

It was stipulated that, except as stated, Mr. Lemke was not otherwise qualified to appear before such grand jury.

It is apparent from this record that Mr. Lemke was not the state's attorney of Burke county, nor his appointed and qualified assistant. Neither is it claimed that he was the attorney general of the state, or his appointed and qualified assistant. He was not a member of the grand jury or a witness before it under actual examination. He was solely an assistant prosecutor, appointed by the court to assist the state's attorney. As such, he was not qualified to appear before the grand jury. But it is claimed by the state, on this appeal, that he was at least a "de facto officer." As there is no such office as assistant prosecutor, or special prosecutor, the claim fails as to them. He may have been rightfully appointed by the court and fully qualified as a special prosecutor to assist the state's attorney in the preparation and trial of the case; but that does not qualify him to appear before the grand jury. He can not be an assistant state's attorney of Burke county "de facto" because he was appointed as a special prosecutor, only, which appointment the trial court had power to make; he accepted that appointment and took no steps to qualify as an assistant state's attorney and at no time claimed to be such assistant state's attorney. He was not authorized to appear before the grand jury and his doing so vitiated this indictment, when attacked on that ground.

The judgment of conviction is reversed, with directions to the trial court to set aside the indictment, upon the defendant's motion.

BIRDZELL, Ch. J., and BURR, CHRISTIANSON, and NUESSLE, JJ., concur.

BURKE, J., did not participate; Honorable CHARLES E. WOLFE, Judge of the Third Judicial District, sitting in his stead.