STATE ex rel. PORTER, Relator v. DISTRICT COURT
OF FIRST JUDICIAL DISTRICT et al., Respondents
No. 8987
Submitted June 19, 1950. Decided July 24, 1950.
220 Pac. (2d) 1035

Mr. Stanley M. Doyle, Mr. Lyle C. Nelson, Polson, Montana, for relator. Mr. Doyle argued orally.

Mr. Melvin E. Magnuson, County Attorney, Mr. John C. Harrison, and Mr. Michael G. Chilton, Deputy County Attorneys, Mr. Floyd O. Small, Special Prosecutor, all of Helena, for respondents. Mr. Harrison and Mr. Chilton argued orally.

Mr. Edmond G. Toomey, Mr. Charles N. Wagner, Mr. Carl Rasch, Mr. Thomas P. Patterson, Mr. H. J. Luxan, Jr., Mr. Sam D. Goza, Jr., Mr. Leo J. Kottas, Mr. T. B. Weir, Mr. Newell Gough, Jr., Mr. E. K. Matson, Mr. Sam C. Ford, Mr. Victor H. Fall, Mr. Hugh D. Galusha, Jr., Mr. Gordon R. Hickman, Mr. Leif Erickson, Mr. William A. Brown, all of Helena, amici curiae. Mr. Wagner argued orally.

MR. JUSTICE METCALF:

Application for a writ of prohibition. The relator is named as defendant in 16 indictments returned against him by the grand jury of Lewis and Clark county. Two of the indictments were returned on October 7, 1949, three on October 18th and the remaining eleven on November 4th.

On October 29, 1949, the relator through his counsel filed a civil action against the grand jurors and others. Allegations in that complaint were deemed contemptuous and Porter and counsel, were adjudged guilty of contempt of court and sentenced to pay a fine. A petition for a writ of review was filed in this court to review the contempt proceedings and the order and sentence of the district court was affirmed. See State ex rel. Porter v. First Judicial District, 123 Mont. 447, 215 Pac. (2d) 279.

On December 13, 1949, the two district judges of the first judicial district requested that the board of county commissioners of Lewis and Clark county declare an emergency to exist for the purpose of meeting the mandatory public expenditures required for the continuance of the grand jury.

On December 15, 1949, the relator filed a taxpayer's suit seeking a writ of injunction restraining the board of county commissioners from appropriating any further money for grand jury purposes. It was there contended that the grand jury was illegal and invalid for reasons hereinafter discussed.

This court on December 15, 1949, accepted jurisdiction, issued a restraining order, and ordered the defendant county commissioners to show cause why they should not be permanently restrained from making the proposed expenditures for grand jury purposes. Thereupon the two district judges on December 19, 1949, made an order declaring: "No emergency appropriation was ever necessary or required in the first place, but the same was proposed and contemplated purely for the convenience of the county clerk and the board of county commissioners." The district judges then declared that the court, "has the necessary and proper authority to make or authorize any expenditures that may arise in the course of the operation of said court, or for the due and proper operation of any grand jury, or other legally constituted body created by and operating under and by virtue of the authority of this court." The district court then ordered that all action with respect to the proposed emergency appropriation be discontinued as unnecessary.

On January 4, 1950, the day before argument in the above cause was to be heard in this court, Porter moved that his proceedings in this court be dismissed for the reason that the defendants "have cancelled and withdrawn their proposed emergency appropriation * * * for the use of the Special Grand Jury, and that the question * * * presented is now moot." No pleadings had been filed by the defendants or affirmative relief demanded. Therefore this court granted the motion and dismissed the action. Porter v. Knapp, No. 8950, Mont., 214 Pac. (2d) 765.

On January 5, 1950, Roger Porter filed and presented a second taxpayer's proceeding to restrain the board of county

commissioners of Lewis and Clark county and the county treasurer and auditor from paying any warrants for grand jury purposes. This court declined to accept jurisdiction and the writ prayed for was denied. See Porter v. Thielen, 214 Pac. (2d) 743, reported in the memorandum decisions review.

The procedure that led to the filing of the petition at bar began when the relator on November 15, 1949, filed a motion to "quash" the indictments, alleging, "That the indictments wholly fail and neglect to fall within the requirements of section 11891, R. C. M. 1935 [R. C. M. 1947, sec. 94-6601], and particularly Paragraphs 1, 2, 4 and 5 thereof." The relator also offered to prove other irregularities and departures from the statutes on the part of the grand jury.

The grounds for setting aside an indictment of a grand jury are set forth in section 94-6601, supra, and are exclusive. Territory v. Harding, 6 Mont. 323, 328, 12 Pac. 750. The trial court properly refused to consider any grounds for setting aside the indictment not enumerated in section 94-6601.

On March 7, 1950, Porter appeared for arraignment. Before pleading it was stipulated that he could withdraw his plea within 25 days and move to set aside the indictments for irregularities set forth in section 94-6601, R. C. M. 1947.

On all 16 of the indictments are endorsed the names of witnesses purporting to have appeared before the grand jury. In addition to other witnesses each indictment had the name of "John Doe" and "Richard Roe" endorsed thereon as witnesses. On March 13, 1950, Porter filed a demand for a bill of particulars requesting the true names of the witnesses designated as "John Doe" and "Richard Roe" on the indictments. When the requested information was not supplied by the county attorney a demand to produce was filed on March 30, 1950.

On the same day a motion to withdraw the plea of not guilty was filed, together with an amended motion to set aside the indictments. On March 31st in accordance with the aforementioned stipulation of March 7, 1950, leave to withdraw his

plea was granted Porter and hearing on the motion to set aside the indictment was set for April 3, 1950. On that date Porter renewed his demand for a bill of particulars to reveal the true identity of witnesses "John Doe" and "Richard Roe" endorsed on the indictments. On April 10th the court of its own motion issued an order striking the names of "John Doe" and "Richard Roe" from the indictment "pursuant to agreement of counsel for the state" and in all other respects denying the relator's demand for a bill of particulars. Amended motions to set aside the indictments were heard on April 20th. Relator's counsel on April 20th protested that he had not been served with the court's ruling on his demand for a bill of particulars and attempted to renew his demand. The court said, "There was consent that these names be stricken from the indictment which indicates there were no such witnesses. In other words, they [the prosecution] are familiar with the rule that the names of witnesses must be endorsed on the indictment before it is returned." Counsel for the relator insisted that the fictitious names represented two actual witnesses who testified before the grand jury. He further asked that "special prosecutor" Small be sworn to testify as to whether or not there were other witnesses. Small objected that it would be "prejudicial error" for him "to testify to something that has transpired in the grand jury room that is secret." Small further told the court, "Neither now or at any future date, if we can help, are we going to be baited by names or otherwise into disclosing things that shouldn't be disclosed and thereby giving them an opportunity, possibly, to have something they don't have now."

The court sustained the prosecutor's objection and at the conclusion of the hearing denied relator's motion to set aside the indictments.

On May 9, 1950, the relator filed the instant case in which he asked this court to review the record and pleading summarized above and issue a writ of prohibition or other appro-

priate writ to prevent the district court from trying him under any of the 16 indictments.

The cause was heard on June 12, 1950, and the respondents on that day filed a demurrer and motion to dismiss the proceedings. Without prejudice to the consideration of the demurrer and motion to dismiss, the respondents were ordered to file an answer, which was done.

Prior to the hearing, 17 members of the bar of Lewis and Clark county petitioned for leave to appear as *amici curiae*, alleging that the cause at bar "involves difficult and novel questions of law, the determination of which vitally affects the district courts of the State of Montana, and the interests of the people of the State of Montana." Leave was granted in accordance with their request.

The relator contends: 1. The name of the prosecuting witness as such was not endorsed on the indictment as required by section 94-6331;

2. The true names of all the witnesses examined before the grand jury were not endorsed on the indictment as required by section 94-6331;

3. Unauthorized persons were present before the grand jury when the charges embraced in the indictments were under consideration.

The failure to endorse the names of witnesses or endorse the indictment as prescribed in the Code and the presence of unauthorized persons before the grand jury are grounds for setting aside the indictment under the provisions of section 94-6601. But section 94-6602 declares that unless the motion to set aside on these grounds be made before the defendant demurs or pleads the grounds of the objection are waived.

It is contended that since these defects can be waived they are not jurisdictional (14 Am. Jur., Courts, sec. 184, p. 380; State v. Vanella, 40 Mont. 326, 333, 106 Pac. 364, 20 Ann. Cas. 398), and not being jurisdictional defects they cannot be attacked by a petition for a writ of prohibition because section

93-9201 limits the function of the writ of prohibition to arrest "the proceedings of any tribunal * * * when such proceedings are without or in excess of the jurisdiction of such tribunal. * * *"

However in the exercise of its superintending control over ▋ the courts, this court has jurisdiction, Const. of Montana, Art. VIII, sec. 2, to correct error within jurisdiction, State ex rel. Regis v. District Court, 102 Mont. 74, 55 Pac. (2d) 1295, when necessary to prevent extended and needless litigation, State ex rel. Barron v. District Court, 119 Mont. 344, 174 Pac. (2d) 809. In the case at bar amici curiae and the county attorney both concede that the issues are of such vital importance as to affect not only the indictments in the instant case but all the proceedings of the grand jury. Not only the rights of the relator but the validity of other indictments are involved. If all the defendants indicted by the grand jury are required to go to trial with these issues undecided serious miscarriages of justice may occur and expensive and needless jury trials take place causing useless expense to the taxpayers and subjecting the relator and other accused to fruitless and unnecessary trials.

It is next contended by respondents that the motion to set ▋ aside was insufficient. While the motion itself is incomplete, its sufficiency was waived in the court below and the motion was submitted and argued on its merits. Near the close of the argument on the motion the special prosecutor declared, "This thing that purports to be, I guess, a motion to set aside an indictment; it is actually not anything * * *. So, while we haven't objected and do not now formally object to this so-called motion, we would normally except if we did. * * * To facilitate matters we have let this go and permitted it to be considered as a proper motion to set aside an indictment * * *." After the hearing and argument on this theory the respondents cannot now object to the sufficiency of the motion. The objection was expressly waived.

As an institution of Anglo-Saxon justice, the origins of the grand jury go back to antiquity. The grand jury is mentioned in the Constitutions of Clarendon and such accusatory tribunals sat before the adoption of the Magna Charta. In the federal courts today the Constitution of the United States provides that ''no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury * * *.'' Amend. V, U. S. Constitution.

The grand jury in medieval England was a protector of the rights of the individual from tyranny of the Crown. As such a protection against arbitrary and oppressive action of the government as well as a means of bringing persons accused of public offenses to trial, the grand jury system became a part of the criminal procedure of this nation. Since the twelfth century a great body of case law has grown up explaining methods and procedure in the conduct of a grand jury. This common law has been incorporated into the statutes of many states and is the case law in others. Montana's grand jury procedure has been virtually unchanged since the adoption of the first Codes after the Constitutional Convention and many of our statutes have remained unchanged since the adoption of the Bannock Statutes in 1864. Montana's statutory grand jury procedure is almost unchanged from the common law procedure.

The inflexibility of the grand jury system, its cumbersome procedure and its technicalities brought about agitation for its abolition and the substitution of the system of prosecution by information. Present day jurisdictions that still use the grand jury method of prosecution have repeatedly reformed their procedure to simplify it and render it less technical. But in any discussion of shorter indictments and simplified procedure the emphasis is on the fact that such reform is a legislative matter. Perkins in his article in 15 A. B. A. J. 292, Short Indictments and Informations, succinctly stated the problem: ''The whole case law of indictments cannot be turned upside down by the Bench.''

Whatever may be the result of simplified procedure for finding indictments, the consensus of the bar is as expressed by Millar in The Function of Criminal Pleading, 12 Journal of Criminal Law 500, ''In any remodeling of our criminal procedure, equality of position in the trial of the case, as between prosecution and defense should be steadfastly maintained.''

The Proceedings and Debates of the Constitutional Convention of Montana indicate another reason behind the movement to abolish the grand jury system of indictment and presentment. This is the secrecy of the proceedings, originally adopted as a part of the cloak protecting the subject from the tyranny of the sovereign, in later years came to be an instrument of malice and spite in the hands of cowardly and secretive informers.

The historical background of grand juries, the common law that has grown up around them, and the criticism of the grand jury system become significant in considering the first and second grounds put forward for the setting aside of the indictment.

The first statutory ground relied upon is that the name of the prosecuting witness as such was not endorsed on the indictment as required by section 94-6331, R. C. M. 1947, so that the indictment was not endorsed as prescribed in the Code. R. C. M. 1947, sec. 94-6601, subsec. 1.

Not only in Montana's Constitutional Convention but in other jurisdictions within and without the United States students of the law were complaining that the secret inquisition of the grand jury was detrimental to the rights of the people. Jurists and lawyers were demanding as did Mr. Burleigh of Custer in our Constitutional Convention, ''that a man should go clothed in the full panoply of manhood and make his complaint against the accused.''

In Cody v. State, 1838, 3 How, Miss. 27, the statute required the district attorney ''to mark upon all bills of indictment the name of the prosecutor or prosecutors.'' The court said:

"This statute was designed to protect the state against the payment of costs for frivolous and malicious prosecutions by affording certain record evidence of the *person* who had perverted the criminal jurisprudence of the county from its true objects and sought to make it a means to gratify his malice and revenge. * * * This act had another most important and salutary object in view, and that was to enable a party against whom a malicious and vexatious prosecution is instituted, to ascertain, with certainty, the hand from whence the injury to his reputation has proceeded. * * * But, these objects may be defeated by a neglect on the part of the officers of the state to comply with the directions of the statute. We are of the opinion, therefore, that this indictment is bad for that reason." Followed in Peter, a Slave, v. State, 3 How., Miss., 433. See also: Williams v. State, 9 Mo. 270; State v. McCourtney, 6 Mo. 649; Commonwealth v. Hutcheson, 1 Bibb, Ky., 355; Allen v. The Commonwealth, 2 Bibb, Ky., 210; Medaris v. State, 18 Tenn. 239.

The common law, too, required such information to be part of the indictment. "The prosecutor or party injured * * * must be described with certainty * * *." Waterman's Archbold on Criminal Procedure, Pleading and Evidence, 7th Ed., Vol. 1, p. 265, and 1 Chitty's Criminal Law, 3d Am. Ed. 211, and English cases there cited.

In U. S. v. Sandford, 27 Fed. Cas. page 952, No. 16,221, 1 Cranch C. C. 323, the court had under consideration a Virginia statute requiring the endorsement of the name of the prosecutor at the foot of every bill of indictment. The court said: "If the words of this section are construed strictly, and if the omission to write the name of the prosecutor vitiates and renders void the indictment, then it is not in the power of government, nor of the grand jury, to prosecute an offender who has been guilty of the grossest misdemeanor, unless some individual person will become prosecutor, and make himself responsible for costs. * * * The grand jury could not find a

bill even on their own knowledge, although bound to do so by their oath. The court could not order a bill to be sent to the grand jury even for the most aggravated trespass or misdemeanor. * * * The question which naturally occurs upon the words 'the prosecutor,' is, what prosecutor? The answer must be, the person who voluntarily goes before the grand jury with his complaint. Before, therefore, you can require that the name of such a prosecutor should be written at the foot of the indictment, you must show his existence. You must show that there was some person who voluntarily complained to the grand jury.''

Although some of the charges in the 16 indictments returned against the relator are the kind that ordinarily would have arisen out of complaints by a prosecuting witness, it cannot be presumed from the present record that there was such a prosecuting witness. Perhaps the witnesses testified reluctantly or the evidence was assembled by the grand jury after examination of the number of witnesses, none of whom could be designated the prosecuting witness. If there was a prosecuting witness, the law requires that the endorsement on the indictment identify him. Candor and justice require that he should be identified. Only in that way may the cowardly and spiteful informer be separated from the public spirited citizen who comes forward ''in the full panoply of manhood to make his accusation.'' Where, as here, the relator requested the information as to whom the prosecuting witness was, he should have been told. If there is no special prosecuting witness he is entitled to that information.

The second ground for setting aside the indictment, i. e., the endorsement of the fictitious names ''John Doe'' and ''Richard Roe'' on the indictment and the refusal of the state to reveal the true names of those persons, raises similar questions.

Respondents' brief declares, ''* * * because we were unable to find any other witnesses that had been overlooked, we were directed and consented to the striking of those names from the

indictment. It was at that time made clear to petitioner and to his counsel that there were no such witnesses and that was the reason for their names being so stricken. Incidentally in this connection, and by our own answer and return filed in this case, it is set forth that there were no such witnesses, and that all of the persons that should have been endorsed on the indictments here have been endorsed."

An examination of the respondents' answer and return reveals that the only mention of the witnesses "Richard Roe" and "John Doe" is as follows: "Respondents deny that respondent court made any order requiring the plaintiff (below) State of Montana, to furnish defendant (relator herein), with the true names and identity of John Doe and Richard Roe by any specific time or at all, and respondents further deny that the acts alleged * * * or any acts or omissions of respondents, whatsoever, have resulted in denying said petitioner of any vital information, or of any information whatsoever, necessary to his defense to the said Indictments."

Nowhere in the answer is there any allegation that there were no such witnesses as "Richard Roe" and "John Doe." The allegation quoted above is a conclusion of the pleader that any information that may have been withheld was not vital or necessary to the preparation of a defense. The respondents could truthfully verify that answer even if there were actual witnesses if they believed the testimony of such witnesses was not vital or necessary. The question of the importance of the witnesses' testimony is for the defense, not the prosecution. The statute requires the endorsement of the names of all witnesses, not merely the names of witnesses the state believes to be important.

Nor does the record corroborate the allegation that it was made clear to relator and his counsel that there were no such witnesses as "Richard Roe" and "John Doe." The record shows, as quoted above, that counsel for defendant did not know that his demand for a bill of particulars had been denied

and the names of "Richard Roe" and "John Doe" stricken from the indictment until the hearing on the motion to set aside the indictment. The court concluded that the consent of the prosecution to strike the names "indicates there were no such witnesses." But there is no testimony from counsel for the state that there were no such witnesses. Indeed there was a refusal to answer when the defense tried to elicit the information by direct examination. The information the prosecution refused to reveal might not have been "vital information" or "necessary to the defense to said indictments" but it was information that special prosecutor Small believed would give the defense "an opportunity possibly to have something they don't have now."

Stephen in The History of the Criminal Law of England (1883), Vol. 1, p. 350, summarizes some of the differences between early English trials and those of his day. In those early trials, (1) the prisoner was kept in confinement more or less secret till his trial, and could not prepare for his defense.

(2) He had no notice beforehand of the evidence against him, and was compelled to defend himself as well as he could when the evidence, written or oral, was produced on his trial.

(3) The witnesses were not necessarily (to say the very least) confronted with the prisoner.

(4) It does not appear that the prisoner was allowed to call witnesses on his own behalf; but it matters very little whether he was or not; as he had no means of ascertaining what evidence they would give, or of procuring their attendance.

In the present day the accused is presumed to be innocent until he is proven guilty and the burden is on the prosecutor to prove the guilt of the offender beyond a reasonable doubt. This is a benefit which every one enjoys under the law. State v. Hanlon, 38 Mont. 557, 100 Pac. 1035. To make this presumption operative the Montana Constitution has provided: "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel; to demand the

nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf * * *.'' Art. III, sec. 16, Mont. Const.

The constitutional right to meet witnesses face to face and to demand the nature and cause of the accusation can be made ineffective if the state can conceal the names of its witnesses until the day of the trial. ''The furnishing of such a list [of witnesses] should be an essential feature of any system of criminal procedure.'' Millar, The Function of Criminal Pleading, supra. See Proceedings of American Law Institute, Vol. 8, p. 132 et seq., where this question is discussed relative to the adoption of section 194 of the Uniform Code of Criminal Procedure.

The reason for the endorsement of the names of the witnesses ▇ was given by this court in State v. McDonald, 51 Mont. 1, 5, 149 Pac. 279, 281, ''The provision was intended as a safeguard to the accused against surprise and unfair advantage by the prosecuting officer * * *.''

The prosecuting officers in their sworn answer failed to deny that there were any witnesses concealed under the names of ''Richard Roe'' and ''John Doe.'' They refused to take the stand and testify under oath that there were no such witnesses. The special prosecutor told the court that the prosecution was not going to give the defense ''an opporunity, possibly, to have something they don't have now.''

It has long been settled that the ''names of witnesses * * * ▇ are not secrets to be undivulged.'' Ex parte Schmidt, 71 Cal. 212, 12 Pac. 55, 56. The only way the defendant can determine whether there has been compliance with the statute requiring endorsement of the names of witnesses is to ask the foreman of the grand jury or the county attorney. The court should have required the special prosecutor to testify as to whether or not any more witnesses had given testimony that

contributed to the finding of the indictments against the relator. Cf. Territory v. Hart, 7 Mont. 42, 14 Pac. 768.

The court's conclusion from the consent of the state to have "Richard Roe" and "John Doe" stricken that "there were no such witnesses" is a matter of which the court could have no knowledge, a conclusion that is not justified from the pleadings or evidence. It was error to deny the relator the right to inquire as to whether there were actually witnesses hidden behind the aliases of "Richard Roe" and "John Doe."

The state contends that the case of State v. McDonald, supra, gives it the right to conceal the identity of a witness behind an alias. In that case a witness' name was endorsed on the information as "John Doe Mitchell" when his true name was James Mitchell. The county attorney stated that the identity of the witness had been concealed because if the witness' true name had been disclosed his life would have been in danger. The court said that failure to endorse the names of the witnesses was indefensible from any point of view. The endorsement was on an information but the court said, "The provision was intended as a safeguard to the accused against surprise and unfair advantage by the prosecuting officer, and to serve the same purpose as a like provision relating to the disclosure of the names of witnesses upon whose testimony an indictment is found and returned by a grand jury." The court declared that the purpose of the statute was "that the defendant, so far as reasonably possible, may be advised of the witnesses known to the county attorney when the information is filed, whom the state intends to call against him, in order that he may have the opportunity to make inquiry with respect to them and prepare himself to meet their testimony." (Citing cases.)

In State v. Gaimos, 53 Mont. 118, 162 Pac. 596, 597, this court called attention to State v. McDonald, supra, and said: "The defendant in all cases is entitled to know what person will be called to testify against him, and every reasonable opportunity

he might desire to investigate them, or to prepare to meet their testimony, should be accorded him.''

If the relator is compelled to go to trial without learning of the true identity of the persons designated as ''Richard Roe'' and ''John Doe,'' or whether there actually were any such persons, and if he is convicted, we would be required to review the whole record and sustain the conviction if possible. Under such circumstances the burden would be upon the relator to show prejudice. R. C. M. 1947, secs. 94-6434, 94-8207; State v. Hay, 120 Mont. 573, 194 Pac. (2d) 232. Where the accused has gone to trial without interposing proper and timely challenge, prejudice is not imputed for the failure of the grand jury to endorse the names of the witnesses. upon the indictment. State v. McDonald, supra; State v. Gaimos, supra.

Yet at this stage of the proceedings before trial, the statute requires the indictment be set aside when the names of witnesses are not endorsed on the indictment. Here is a timely motion to set aside the indictment and the relator is being deprived of a substantial right by the court's refusal to comply with the statute. If there were no witnesses it is the duty of the prosecution to so state either by a verified pleading or under oath; if there were witnesses identified as ''John Doe'' and ''Richard Roe'' it is indefensible for the prosecution to conceal their identity from the accused merely because the prosecutor believes that a disclosure of their true names is not ''vital'' or ''necessary to prepare a defense.''

The next contention upon the part of the relator is that the indictment should be set aside because of the presence of persons before the grand jury not provided for in section 94-6324, R. C. M. 1947. That section is as follows: ''The grand jury may, at all reasonable times, ask the advice of the court, or the judge thereof, or of the county attorney; but unless such advice is asked, the judge of the court must not be present during the sessions of the grand jury. The county attorney of the county may, at all times, appear before the grand jury for

the purpose of giving information or advice relative to any matter cognizable by them, and may interrogate witnesses before them whenever they or he thinks it necessary; *but no other person is permitted to be present during the sessions of the grand jury* except the members and witnesses actually under examination, and no person must be permitted to be present during the expression of their opinions or giving their votes upon any matter before them.'' Emphasis supplied.

Section 94-6601, subsection 3, declares that the indictment must be set aside ''When a person is permitted to be present during the session of the grand jury, and when the charge embraced in the indictment is under consideration, except as provided in section 94-6324; * * *.''

A case is ''under consideration'' before the grand jury when witnesses are being examined. State v. Slocum, 111 Minn. 328, 126 N. W. 1096; People v. Tru-Sport Pub. Co., 160 Misc. 628, 291 N. Y. S. 449, 457.

It was stipulated at the hearing on the motion to set aside the indictments that since July 7, 1949, Floyd O. Small had appeared before the grand jury and participated in the examination of witnesses and the taking of testimony. Floyd O. Small is a licensed attorney in private practice who was designated ''special prosecutor.''

The facts surrounding the appointment of Small as ''special prosecutor'' are: On May 24, 1949, one of the respondent district judges publicly announced that he was considering calling a grand jury to investigate complaints made to him of alleged gambling extortion rackets being carried on in Helena. On July 6, 1949, the two district judges of the first judicial district ordered that a grand jury be called ''to investigate such matters relative to alleged violations of law as shall be brought to its attention.'' The same day the county attorney wrote to the board of county commissioners the following letter:
''Gentlemen:

''I have this day appointed Floyd O. Small as Special Prose-

cutor for the County Attorney's office to assist in the conduct of matters before and the presentation of matters to the Grand Jury called by the Judges of the District Court of the First Judicial District of the State of Montana, in and for the county of Lewis and Clark.

"In order that the additional duties which will fall upon this office in the services it must render to the Grand Jury be performed creditably and efficiently, it is essential that a Special Prosecutor be secured. This appointment will continue so long as the Grand Jury functions.

"This appointment has been submitted to and approved by the District Judges.

"I respectfully request that you approve Mr. Small's appointment as such Special Prosecutor."

The appointment was immediately approved by the board of county commissioners. At that time the county attorney had two deputies.

The grand jury was impaneled on July 25, 1949, one of their number, James W. Salisbury, was appointed foreman, the oath was administered, they were charged by the court, and began the inquiry for which they were called.

"Special prosecutor" Small sat with the grand jury, advising them, examining witnesses and assisting in the conduct of the proceedings. Nowhere is it contended that he was present while the grand jury was voting.

On December 29, 1949, after the filing of the action State ex rel. Porter v. District Court (No. 8950 in this court) the district court made the following order:

"In The Matter of The Grand Jury:

"It appearing to the court that, through inadvertence and misunderstanding, no minute entry was made hereby by the Clerk of this Court concerning this court's action herein on July 7, 1949, it is hereby Ordered that such minute entry is hereby directed to be entered herein to conform to the actual

order announced and rendered by the Court on July 7, 1949, in the manner following:

" 'The Judges of this Court, deeming it imperative in furtherance of justice and the public welfare and safety, having heretofore called a Grand Jury in Lewis and Clark County, and informing the County Attorney of Lewis and Clark County of that fact, and being advised by the last named official that it is impossible, in view of the work currently confronting the Office of said County Attorney for said officer to carry the burden of the duties incident to his office and the further burden of the duties incident to said Grand Jury, and the Judges of this Court having investigated the matter and having concluded that, to enable such Grand Jury to function properly and efficiently, extra assistance for the County Attorney is necessary; now pursuant to the powers and duties in the Judges of this Court reposed by the Constitution and Laws of the State of Montana, and in exercise of the power inherent in this Court to make all necessary appointments and expenditures for the proper functioning of said Court and the agencies thereof; does hereby, with the consent and at the request of the County Attorney of Lewis and Clark County, designate and appoint Floyd O. Small, an officer of this Court, duly admitted to practice before this Court, to appear before the Grand Jury called by the Judges of this Court. The compensation of the said Floyd O. Small to be fixed by this Court.

" 'In order that the records of this Court in the proceedings herein may speak the truth the above order will be entered as of July 7, 1949, nunc pro tunc'."

A strict reading of the statute would permit only the county attorney, the witnesses actually under examination, the judge if asked to give advice, and the members of the grand jury to be present at any one time.

In State ex rel. Nolan v. District Court, 22 Mont. 25, 30, 55 Pac. 916, 918, the question was whether the attorney general under section 94-6324, supra, could conduct examinations be-

fore the grand jury. This court held that the attorney general is the principal law officer of the state. He has statutory power to assist and supervise the county attorney. "The attorney general may, in his assistance, do every act that the county attorney can perform, and, in his supervision, may even undo any that he has already done. * * *

"The objects of this statute [sec. 94-6324] are to preserve to the body alone clothed with authority of indicting for public offenses—the grand jury—a right to have witnesses interrogated by official counsel at its sessions, and to keep the proceedings of that body as secret as possible, by excluding therefrom those not vested with official authority; * * *."

Therefore by analysis of the complete Code and comparison and correlation of the statutes, this court found that the attorney general may be present before the grand jury and assist in the marshalling of evidence and the examination of witnesses without violating section 94-6324 or destroying the validity of the indictment under section 94-6601. There is statutory authority for the presence of the attorney general.

In Territory v. Harding, 6 Mont. 323, 12 Pac. 750, the district attorney for the second judicial district, Montana Territory, was absent from the county and there was no one present to act as prosecutor. The court appointed a member of the bar as prosecutor to represent the territory. The special prosecutor appointed signed the indictment and the defendant appealed from a conviction and set forth as one of the reasons for reversal that the indictment was not signed by the district attorney. The statute required that the indictment be signed "by the attorney prosecuting."

The court asked the rhetorical question: "Why authorize the 'attorney prosecuting' to sign indictments if, in all cases, indictment must be signed by the district attorney?" The court answered its question by concluding that there were times when the "attorney prosecuting" might be other than the district attorney. Then the court laid down the circumstances under which a prosecutor might be appointed: "If a court,

having general criminal jurisdiction which it is bound to exercise, and is charged with the duty of trying criminal causes, which duty can only be performed or jurisdiction exercised through the instrumentalities of grand juries, and the law failing to provide such instrumentality, has, by necessary and indispensable implication, authority to provide and summon grand juries, then, in such a case and by a similar implication *when the necessity arises, and the district attorney is absent or disqualified and the law fails to provide for such an emergency,* the court has the power to appoint an attorney to prosecute and to represent the territory, so that the jurisdiction conferred, and which is bound to be exercised, may not fail. This power comes from the law which has created our district courts and invested them with general criminal jurisdiction, which they are bound to exercise and which can only be done through the instrumentality of prosecuting attorneys. *This implied power can only be exercised in cases of necessity and in cases for which the law has failed to provide;* and then it is co-extensive with the jurisdiction to which it is essential. If the district attorney had been present and not disqualified, no necessity would have arisen to call into exercise this implied power of the court; but in his absence and in the absence of any one authorized to prosecute for the territory, and the law failing to provide for such a case, it was the exercise of lawful authority for the court to appoint a suitable person to represent the territory and prosecute the action, who, *for the time being and for the case in hand,* became the 'attorney prosecuting'.'' Emphasis supplied.

The same construction would be given section 94-6333, R. C. M. 1947, which provides: ''An indictment must be signed by the attorney prosecuting; and when the grand jury returns any indictment into court, the judge must examine it, and if the foreman has neglected to indorse it, 'A true bill,' with his name signed thereto, or if the attorney prosecuting has neglected to sign his name, the court must cause the foreman to indorse, or

the attorney prosecuting to sign it, as the case may require, in the presence of the grand jury."

Under this section the attorney general, if he were the "attorney prosecuting" could sign the indictment.

It is urged that the rule of Territory v. Harding should be extended to allow a special prosecutor in cases where the county attorney is present and qualified. The case of Tull v. State ex rel. Glessner, 99 Ind. 238, is cited as authority for this contention. In that case counsel was appointed by the court to assist the prosecuting attorney in the trial of the case. The court held that a trial court has inherent power to appoint counsel to assist the prosecuting attorney in the trial of a criminal case. The court said: "The interests of public justice require that the representatives of the State shall have power to invoke professional assistance for the prosecuting attorney when the occasion demands it. To deny the right of the prosecutor to needed assistance might often lead to the defeat of justice and the escape of offenders who justly merit punishment. The accused is at liberty to summon to his assistance the most learned lawyers and ablest advocates of the bar, and bare justice requires that the State should be granted a corresponding right to call to the aid of its prosecuting attorney counsel learned in the law. The forensic contest should be fought with something like a just equality of opposing forces."

This court too has sustained the right to appoint a special prosecutor to assist the county attorney in the *trial* of a criminal action. State v. Whitworth, 26 Mont. 107, 66 Pac. 748. Tull v. State ex rel. Glessner was cited in support of this position. See also, State v. Tighe, 27 Mont. 327, 71 Pac. 3. Since 1909 there has been express statutory authorization for the employment of "special counsel to assist in the prosecution of any *criminal case pending*." R. C. M. 1947, sec. 16-1126; Board of Comm'rs of Hinsdale County v. Crump, 18 Colo. App. 59, 70 Pac. 159, and People v. Blackwell, 27 Cal. 65, 66, cited by *amici curiae* were cases of this kind where the special counsel was appointed to assist in the conduct of the trial.

In Williams v. State, 188 Ind. 283, 302, 123 N. E. 209, 215, the Indiana Supreme Court declared that the rule of Tull v. State ex rel. Glessner, supra, permitted the appointment of a special prosecutor to appear before the grand jury. "* * * while recognizing the expediency and desirability of the state having such assistance in important and difficult criminal causes [this court], was impressed with the view that the duty of providing for such emergencies rests primarily with the Legislature; however, the inherent powers of the court to make such appointments was recognized, and we still adhere to the doctrine that the question is one for the sound discretion of the trial court. [Citing cases.]"

In Territory v. Harding, supra, this court held that certain powers necessarily inure to a court in order to carry out its functions. These are powers implied from the establishment of the court itself. The judge of a court having a common law jurisdiction has the "inherent right" to do every act necessary to make his court operative under the common law. But when the legislature prescribes the way in which the court may function then the implication of a power is no longer necessary. If a court is established and no procedure is established for the summoning of trial jurors the judge would have the implied power to summon them in any way that was consistent with due process. For the right to trial by jury is a basic right recognized in the common law and by the United States Constitution and no court could function without a jury. But when as here the legislature has provided a procedure for the impaneling of a trial jury, then there is no longer any need for an implied power. The legislative procedure must be followed.

This is all that the court said in Territory v. Harding. "This implied power can only be exercised in cases of necessity, and in cases for which the law has failed to provide. * * *" [6 Mont. 323, 12 Pac. 754.]

The law provides that the county attorney must "attend before and give advice to the grand jury, whenever cases are

presented to them for their consideration; * * *." R. C. M. 1947, sec. 16-3101.

In the instant case the county attorney was present and able to act. In the various matters relating to the grand jury that were heard in this court he was present and ably represented the county. There is no contention that he was disqualified. The pleadings and briefs affirmatively state that the county attorney was cooperative and no question is raised as to his good faith. The only reason given for the appointment of a "special prosecutor" is that the duties of the office were such that there was a necessity for the appointment of someone to aid and assist the grand jury.

In State v. Guthrie, 185 Wash. 464, 56 Pac. (2d) 160, 165, a grand jury was called to investigate the conduct of all county officials. The prosecuting attorney wrote to the judge who called the grand jury that he welcomed an investigation of his office and recommended that a competent attorney be appointed to handle the investigation and the grand jury. The court's order appointing the special prosecutor recited that it appeared to the court that charges had been made against the prosecuting attorney, that he deemed himself disqualified and it appeared to the court that he was disqualified. Under such circumstances the motion to set aside the indictment was denied. There was a Washington statute authorizing the court to appoint a qualified person to fulfill the duties of the prosecutor when the prosecuting attorney was unable to do so.

A very different situation arises when the county attorney is present and able to act and not disqualified. State v. Guthrie, supra, distinguished the earlier Washington case of State v. Heaton, 21 Wash. 59, 56 Pac. 843, on this basis. In the latter case the grand jury exonerated the prosecuting attorney but suggested that it would be embarrassing for him to advise them and recommended that a special prosecutor be appointed. The prosecuting attorney asked that he be permitted to perform his duty with respect to the grand jury but the court followed the

274

suggestion of the grand jury and appointed a special prosecutor. The Washington Supreme Court held that the office of prosecuting attorney was quasi-judicial and that the court was not authorized to replace him with a special prosecutor. The attendance of the unauthorized appointee upon the grand jury, his advising them and aiding them in their deliberations, was a substantial irregularity requiring the indictment to be set aside.

In this state a "county attorney is a constitutional officer ▮▮▮▮ (article 8, sec. 19, Const.), acting under oath, vested with authority, and it is his duty to inquire into alleged violations of law, to institute criminal proceedings, and to represent the state in matters and proceedings in his county * * *." State ex rel. Juhl v. District Court, 107 Mont. 309, 314, 84 Pac. (2d) 979, 981, 120 A. L. R. 353, "The county attorney in this state, not only directs under what conditions a criminal action shall be commenced, but from the time it begins until it ends his supervision and control is complete, limited only by such restrictions as the law imposes." Halladay v. State Bank of Fairfield, 66 Mont. 111, 212 Pac. 861, 863.

So in Montana, as in Washington, the county attorney is a ▮▮▮▮ public officer, a part of the judicial system, vested with power over the criminal prosecutions in his county and as such officer responsible to the people for the performance of the duties entrusted to him.

Then when a county attorney is not disqualified and is present and able to act may he acquiesce in a stranger taking over his obligations and duties?

A leading case is People v. Scannell, 36 Misc. 40, 72 N. Y. S. 449, 450. There the district attorney employed one Samuel Ordway special counsel to present and conduct the proceedings against the defendants before the grand jury. The New York statute, Code Cr. Proc. sec. 313, like Montana's, provided that an indictment must be set aside "when a person has been permitted to be present during the session of the grand jury, while the charge embraced in the indictment is under considera-

tion," except the court, the district attorney and the witnesses. The court stated the question, "Has the district attorney a right, in the absence of statutory authority, to delegate to a private attorney the power and duty which the law imposes upon him, by virtue of his office, in the prosecution of cases before the grand jury?" The court then answered the question posed: "The district attorney is not an ordinary legal attorney. He is 'a sworn minister of justice,' 'a quasi judicial officer,' representing the commonwealth. The powers and duties imposed by law upon public officials, that require the exercise of judgment and discretion in their performance, cannot be delegated without express legislative authority. It was illegal for Mr. Ordway, as special counsel, to assume the powers and duties of the district attorney. * * * In directing Mr. Ordway to attend before the grand jury, the district attorney undertook, without legislative sanction to delegate to a private individual the most grave official duties imposed upon him as an officer. This conduct was not in accordance with the express provisions of the law, and it was contrary to the spirit and policy of the law. * * * The statute is explicit and mandatory. It leaves no discretion with the court, but declares that under circumstances like these the indictments must be set aside."

In the instant case however, after the county attorney had attempted to appoint a special prosecutor with the court's approval, the court issued a *nunc pro tunc* order making the appointment themselves. The same procedure was followed in State v. Johnson, 55 N. D. 437, 214 N. W. 39, 41. The grand jury was called on December 22, 1924, to convene on January 5, 1925. The board of county commissioners adopted a resolution recommending the appointment of a special prosecutor. On December 30, 1924, they recommended the appointment of William Lemke as special investigator and accountant. As soon as the state's attorney elect took office on January 5, 1925, he approved the resolution. Lemke appeared before the grand

jury, advised them, questioned witnesses and performed the duties usually performed by the state's attorney. The state's attorney was present, capable of acting and not disqualified, nor had he refused to act. In June 1925, the defendant indicted by the grand jury moved to set aside the indictment under the North Dakota statute like section 94-6601, R. C. M. 1947, and like the New York statute, supra. Thereupon the trial court made an order *nunc pro tunc* appointing Lemke special counsel to assist the state's attorney and the grand jury. The North Dakota Supreme Court set aside the indictment on defendant's motion. The court held: "It is apparent from this record that Mr. Lemke was not the state's attorney of Burke county, nor his appointed and qualified assistant. Neither is it claimed that he was the Attorney General of the state, or his appointed and qualified assistant. He was not a member of the grand jury, or a witness before it under actual examination. He was solely an assistant prosecutor, appointed by the court to assist the state's attorney. As such, he was not qualified to appear before the grand jury. But it is claimed by the state, on this appeal, that he was at least a 'de facto officer.' As there is no such office as assistant prosecutor, or special prosecutor, the claim fails as to them. He may have been rightfully appointed by the court and fully qualified as a special prosecutor to assist the state's attorney in the preparation and trial of the case; but that does not qualify him to appear before the grand jury."

People v. Scannell, supra, is in accord, "The sanction of the judge presiding over the court in which the grand jury was serving conferred no authority."

Even Indiana, where as we have seen, the court was held to have inherent power to appoint a special prosecutor to perform the prosecuting attorney's duties with the grand jury has held: "Inquisitorial powers are vested in the office of the prosecutor and in grand juries, and not in judges and courts. The statute authorizes courts to appoint special prosecutors where the regular prosecutor does not attend at the term. In

the early cases it was suggested that this power to appoint was inherent in the court, but, in the later cases, this view has been disapproved, and it has been thought that it arises rather by implication from the legislative appointive power expressly conferred. It cannot be doubted that, where it is established that the prosecuting attorney is an interested party, or otherwise clearly incapacitated, the court may appoint an attorney to represent the interests of the state. But this may not be done upon mere suspicion or rumor, and upon the mere ex parte motion of the judge, and the decisions disclose that in the cases where the appointment of a special prosecutor was upheld, the regular prosecutor had admitted disqualification or incapacity." State ex rel. Spencer v. Criminal Court, 214 Ind. 551, 15 N. E. (2d) 1020, 1022, 16 N. E. (2d) 888.

Under Oklahoma statutes similar to sections 94-6601 and 94-6324, indictments were set aside because of the presence of a special prosecutor before the grand jury. See Hartgraves v. State, 5 Okl. Cr. 266, 114 Pac. 343, 33 L. R. A., N. S., 568, Ann. Cas. 1912D, 180; and State v. Maben, 5 Okl. Cr. 581, 114 Pac. 1122.

By special legislative act the appointment of special prosecutors and their appearance before the grand jury has been authorized in Oklahoma (See State v. Hudson, 44 Okl. Cr. 1, 279 Pac. 921), in North Dakota (State v. Rodman, 57 N. D. 230, 221 N. W. 25) and in New York (People v. Fuller, 156 Misc. 404, 282 N. Y. S. 28). In the absence of such legislative authorization, however, the earlier cases are controlling.

Respondents and *amici curiae* urge that Raymond et al. v. People, 2 Colo. App. 329, 30 Pac. 504, 511, is authority for the appointment of a special prosecutor and his appearance before the grand jury and should be followed. But Colorado has no such statute as our section 94-6601 providing that the indictment must be set aside if unauthorized persons are before the grand jury. The only basis for setting aside the indictment then would be a showing that the defendants were prejudiced and the case affirmatively states that, "The record fails to

disclose that the defendants were in any way prejudiced or injured by the appearance of special counsel before the grand jury. It is neither averred, nor was it claimed in argument, that they were so prejudiced or injured.''

In State v. Tyler, 122 Iowa 125, 97 N. W. 983, 985, where there was a statute like section 94-6601, the court permitted special counsel before the grand jury on the authority of the ''inherent power'' of the court to employ special counsel as developed in Tull v. State ex rel. Glessner, supra, and on the additional theory that ''Attorneys are officers of the court, and the oath taken by them when admitted to practice is quite as full and complete as that of the county attorney. True, they execute no bond, but when acting as special counsel for the state their conduct is subject to review.'' Both these propositions have already been discussed and are not the law in this state. Actually in the Tyler Case the county attorney was absent while the grand jury was in session so there was a. necessity for the appointment of a special prosecutor and the case is analogous to Territory v. Harding, supra.

There remains for consideration the early California Case of People v. Magallones, 1860, 15 Cal. 426, decided under the provisions of sections 216 and 278 of California Criminal Practice Act of 1851. These sections subsequently became sections 925 and 995 of the California Penal Code and were adopted by the legislature of this state by the Montana Code of 1871. So that prior to their adoption by Montana the California statutes had been construed by the California Supreme Court and are presumed to be here adopted as so construed. Winnett Pac. Oil Co. v. Wilson, 71 Mont. 250, 229 Pac. 850, and cases there cited.

In the Magallones case there was an 1858 Act of the California legislature authorizing the board of supervisors of the city and county of San Francisco to appoint an assistant prosecuting district attorney who should also be the prosecuting attorney for the police court. The court construed this section to authorize the assistant prosecuting district attorney to ''assist the Dis-

trict Attorney in the discharge of the various duties devolving upon him by law. One of these duties is the prosecution of charges before the grand jury, and if the assistant may perform the duty, he must be deemed to be clothed with the powers and privileges necessary for that purpose. While acting for the District Attorney, his acts possess the same validity, and must be regarded in the same light, as if done by that officer in person."

The California court found statutory authority for the presence of the assistant before the grand jury just as this court found statutory authority for the presence and participation of the attorney general in State ex rel. Nolan v. District Court, supra. California's Magallones Case and Montana's Nolan Case have the same rationale. That the legislature by granting a public official certain duties and certain powers contemplated that he could carry them out. But neither case is authority when a person not a public official and not clothed with statutory authorization tries to take over the power and privileges and duties of the county attorney with or without the sanction of the court or the acquiescence of the county attorney.

If the question of the endorsement of witnesses were the only question involved we would be disposed to return the cause to the trial court with directions to permit the relator to interrogate the special prosecutor or the foreman of the grand jury as to whether or not there were any witnesses who testified before the grand jury and whose names were not endorsed on the indictment.

Concealing the identity of witnesses whose names are required to be revealed to the accused is a return to medievalism and completely foreign to our modern enlightened concepts of justice. The situation is not at all analogous to the use of a patently fictitious name on an information. Identifying witnesses on an information by the fictitious names of "John Doe" or "Richard Roe" is notice to the accused that there are other witnesses not then known to the county attorney but

whom the county attorney believes that further investigation will bring to light. In the case of an indictment the statute requires only that the names of witnesses who testified before the grand jury be endorsed on the indictment. The very fact that the witnesses appeared either voluntarily or by subpoena and were present before the grand jury indicates that their names were known. In such circumstances it is inexcusable for the state to conceal these witnesses from the accused. The statute requires that their names be endorsed. The history of criminal procedure demonstrates the sound reasons why the accused is entitled to this information. It is a fundamental right of the accused and depriving him of that right is depriving him of a fair trial. But because the prosecution's brief and oral argument declare there were no such witnesses, it may be that the rights of the accused were not violated. So that even though the question is not properly raised in the pleadings it might be expeditiously settled by hearing evidence and a finding by the trial court.

However, the appearance of the "special prosecutor" before the grand jury when the charges against Porter were under consideration is a more serious matter. "Special Prosecutor" Small had no right to be in the grand jury room. The "special prosecutor" was not a public officer, took no oath, and acquired no authorization from the acquiescence of the county attorney. Under Montana's statutes the county attorney could not delegate to unofficial counsel his right to advise the grand jury, assist them with their investigations and examine witnesses. Nor did the order of the district judges give the "special prosecutor" any authority. Such authority must be granted by statute.

The duty of the county attorney to advise and meet with the grand jury when one is called is a duty that he must carry out if he is able and not disqualified, regardless of the press of business in his office. The record shows that the county attorney testified that on the 7th day of July 1949, there were no criminal or civil actions pending that required special assistance. Even

if there were, the county attorney should have carried out his duties with the grand jury and had the "special prosecutor" appear in the trial where there was statutory authority for his participation.

"If the county attorney was overworked by reason of having two courts in session, engaged in the trial of criminal cases, and a grand jury on his hands at one and the same time, he should have directed his legally constituted assistant to attend the grand jury, or have attended the grand jury himself and performed his duties there. His duties in the grand jury room are the most important duties he has to perform, and those most rigidly enjoined upon him by the law." Viers v. State, 10 Okl. Cr. 28, 40, 134 Pac. 80, 86.

"It has always been the policy of the legislature, carefully observed by our court, to provide for the strict construction of penal statutes in the interest of the accused. We think the proper course to pursue in all such matters is well expressed in the case of McSwane v. State, 200 Ind. 548, 165 N. E. 319, where it is said: 'It is essential that there shall be a strict compliance with legislative requirements concerning commencement of a criminal action.' And this court said in State ex rel. Foot v. Dist. Ct., 81 Mont. 495, 501, 263 Pac. 979, 981: 'The law seeks no unfair advantage over a defendant, but is watchful to see that the proceedings under which his life or liberty is at stake shall be fairly and impartially conducted'." State ex rel. Juhl v. District Court, 107 Mont. 309, 315, 84 Pac. (2d) 979, 982, 120 A. L. R. 353.

At this stage of the proceedings, before trial, the statute is ▮▮▮ mandatory. The accused need not show prejudice. The very appearance of an unauthorized person is sufficient to set aside the indictments. U. S. v. Edgerton, D. C. Mont., 80 F. 374. Annotation, 4 A. L. R. (2d) 392, 47 Col. L. Rev. 682, 32 Minn. L. Rev. 504.

The writ will issue directing the district court to set aside the indictments against the relator Porter which were under consid-

eration when "special prosecutor" Small was present in the grand jury room.

The district court's order to set aside the indictments entered in accordance with this opinion will not bar prosecution for the offenses charged. R. C. M. 1947, sec. 94-6605. The cases will be ordered resubmitted to the county attorney in accordance with section 94-6604, R. C. M. 1947, for the filing of such informations as he believes necessary in the interest of justice or to another grand jury if in the discretion of the district court one is believed to be necessary.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES ANGSTMAN and BOTTOMLY concur.

MR. JUSTICE FREEBOURN:

I concur in the result reached because, since the county attorney could have and, under the law, should have attended the grand jury, the presence of a special prosecutor was unnecessary and in direct violation of express statute.